By the Court, Bronson, J.
The depositions of Mrs. Purdy, who had died before the trial, were offered in evidence upon two grounds : 1. as depositions taken de bene esse in the court of general sessions • and 2. as examinations before Mr. Merritt, the committing magistrate.. There is a difficulty at the outset, in allowing them to be read as depositions taken in the general sessions ; for, at the time they were taken, there was no suit or proceeding against the defendant pending in that court. The. defendant had just before been committed to prison by a magistrate on a criminal charge; but no indictment had been found, and whether she would be indicted, if at all, in the sessions, or the oyer and terminer, was a question about which nothing could then be known. I do not see how the sessions could acquire jurisdiction of the matter except by indictment found in that court, or in the oyer and terminer and transmitted to the sessions for trial. If the court had no jurisdiction, the depositions are extra-judicial, and consequently void. But as this difficulty was not mentioned at the bar, there may be some legal provision on the subject which I have overlooked, or there may have been an understanding between the counsel that the objection should not be made. It is proper, therefore, to consider the case upon the broad ground discussed at the bar.
Can the public prosecutor have depositions taken de bene esse in criminal cases, and read them in evidence without the consent of the defendant 1 I think he cannot. The general rule certainly is, that the witnesses must appear in court and be confronted with the accused party. In trials for homicide *295 the dying declarations of the person murdered may be given in evidence against the defendant. This is, I think, the only exception to the general rule which has been mentioned, except such as are based upon some statute law. A practice sprung up in this state at an early day, of taking depositions de bene esse in civil suits, which were afterwards read in evidence on proof of the death or absence of the witness. (Mumford v. Church, 1 John. Cas. 147 ; Sandford v. Burrell, Anth. N. P. 184 ; Jackson v. Kent, 7 Cow. 59 ; Wait v. Whitney, id. 69 ; Packard v. Hill, id. 489.) This practice has since been sanctioned by the legislature. (2 R. S. 391, Art. I.) But this statute does not, nor did the prior practice extend to criminal cases.
We are referred to another statute which provides, that “ the proceedings prescribed by law in. civil cases, in respect to the empannelling of juries, the keeping them together, and the manner of rendering their verdict, shall be had upon trials of indictments ; and the provisions of law in civil cases relative to compelling the attendance and testimony of witnesses, their examination, the administration of oaths and affirmations, and proceedings as for contempts to enforce the remedies and protect the rights of parties, shall extend to trials and other proceedings on indictments, so far as they may be in their nature applicable thereto, subject to the provisions contained in any statute.” (2 R. S. 735, § 14.) It was not the object of this section to give new remedies in criminal cases, but to direct the mode in which existing remedies should thereafter be applied. “ The provisions of law in civil cases,” in relation to the matters particularly specified, are extended to the like proceedings on indictments; but it is only u so far as they may be in their nature applicable thereto.” Much stress has been laid upon the words “ their examination,” as applied to witnesses. But those words must be restricted to cases where the examination was already provided for by law; and there is ample scope for their operation. They apply when the witness is produced in court, when he is examined on commission, and when ex *296 amined conditionally at the instance of the defendant. (2 R. jS. 731, § 73, 75.) The legislature did not intend by this general provision in relation to the forms and modes of proceeding in criminal cases to introduce a new rule into the law of evidence. This is the more evident from the fact that special provision had already been made in the same chapter for the examination of witnesses out of court. After issue joined upon the indictment, the defendant may have a commission to examine witnesses residing out of the state, and the prosecuting officer may join in the commission, and name witnesses on the part of the people. (2 R. S. 731, § 73.) And after indictment found, the defendant may also examine witnesses conditionally, as in civil cases. (§ 75.) After having thus specially provided for particular cases, it is impossible to suppose that the legislature, in the general provision which follows on page 735, ^ 14, intended to cover an entirely new class of cases, and provide for the examination of witnesses de bene esse on the part of the people.
There is a class of cases where depositions taken out of court, and without the consent of the defendant, may he read in evidence against him. The statutes 1 § 2 Phil. <5* Mary, c. 13, and 2 <$*3 Phil. <$• Mary, c. 10, provide, that the magistrate shall take the examination of the prisoner, and the information of them that bring him, put the same in writing, and certify it to the next gaol delivery within his commission. We have a similar statute. (2 R. S. 708, § 13—27.) It is generally agreed that' depositions taken in pursuance of these statutes may, when the witness is dead, and in some other cases, be read in evidence on the trial. The statutes do not provide that the depositions shall be evidence ; but they are admitted on the ground that they have been taken in the course of a judicial proceeding expressly authorized by law, when the defendant wras present and had the right of cross-examination. It is sometimes said in the books that the deposition is admitted because it is not extra-judicial. But that is only a part of the true reason, and is calculated to mislead. Going upon that *297 reason alone, the original complaint on oath before the magistrate on applying for the warrant would be admissible evidence against the defendant, although he had not then been brought into court. That is a judicial proceeding) and yet I am not aware that the original complaint was ever received in evidence against the defendant. The contrary was expressly adjudged in The State v. Hill, (2 Hill’s Law Rep. So. Car. 609.) The deposition must not only be taken in a judicial proceeding, but it must be taken when the defendant is present and has the opportunity to cross-examine the witness) otherwise it will not be received.
It is said that depositions taken by the coroner on holding an inquest are evidence, although the defendant was not present when they were taken. This doctrine has been gravely questioned, and I am strongly inclined to the opinion that it cannot be maintained. The great principle that the accuser and accused must be brought face to face, and that the latter shall have the opportunity to cross-examine, can never be departed from with safety. Neither life nor liberty should ever be put in peril by listening to ex parte depositions. It is better that the guilty should sometimes go free, than that the innocent should be subjected to such an ordeal. It is not, however, necessary at this time to pass upon the admissibility of depositions taken before the coroner in the absence of the accused, and I will therefore only mention some of the books where the right to give such evidence has been strongly questioned. These are, 2 Stark. Ev. 489—493, ed. of ’26 ; 2 Russ on Cr. 661 ; Roscoe’s Cr. Ev. 53, 54 ; The State v. Hill, (2 Hill’s Law Rep. So. Car. 607, 610 ;) Cowen & Hill’s Notes to Phil. 940, note 677.(a) If such depositions are admissible, it proves nothing against the defendant, for the coroner is authorized by statute to examine the defendant, and to return the testimony of all witnesses examined before the jury. (2 R. S. *298 742, art. I.) The expositions are not, therefore, extra-judicial. But there is no statute authorizing the court in which an indictment is pending to take depositions without the consent of the defendant. The authority of the court of general sessions to take these depositions, if it exist at all, must therefore be found in the common law.
The common law has not authorized any such proceeding in criminal cases. The statutes of Philip £f Mary only provide for the taking of depositions in cases oi felony, and it was long since settled that depositions taken by the magistrate in cases of misdemeanor are not admissible. (Rex v. Paine, 1 Salk. 281, 1 Ld. Raym. 729, 5 Mod. 163, Comb. 358, Carth. 405, S. C.) This case seems to have been very carefully considered. The justices of the K. B. sent one of their number to the justices of the common pleas to learn their opinion, and all the judges of both courts agreed that the deposition could not be received. Carthew only mentions the other questions which arose in the cause, and the report in Modern states that the deposition was rejected because the defendant was not present, and so had lost the benefit of a cross-examination. But there can be no doubt that the other point was also decided ; and the case must therefore be regarded as an adjudication by the two courts that there is no authority at the common law for taking depositions out of court in criminal cases. In the case of Thatcher and Waller, (Sir T. Jones, 53,) the defendants were footmen to Lord Cornwallis, arid were charged that, with him, they had murdered one Robert Clerk. They were acquitted for want of evidence, and it was then moved by the chief justice that the footmen “ should be examined before one of the judges for the preservation of their testimony against the other offenders: this was not assented to by the other judges, who said that they had no authority in this case [other] than as justices of the peace.” If the court of K. B. in England cannot order the taking of depositions before one of the judges in criminal cases, it is quite clear that the New-York general sessions cannot order the examination of a witness be *299 fore the recorder. In The King v. Morphew, (2 Maule & Selw. 602,) the court made it a condition in putting off the trial on the application of the defendant, that he should consent to the examination upon interrogatories of a material witness for the crown who was about to leave the country. And notwithstanding the defendant’s consent, the attorney-general, Sir William Garrow, doubted whether the deposition could be read in evidence.
At the common law, the defendant, as well as the public prosecutor, must produce his witnesses on the trial; but the defendant was sometimes aided by putting off the trial until the public prosecutor would consent to an examination out of court. (Mostyn v. Fabrigas, Cowp. 174 ; 1 Chit. Cr. L. 612.) The statute has now given the defendant a commission for witnesses out of the state, and allowed him to examine other witnesses conditionally, as in civil cases ; but these privileges are confined to the defendant. (2 R. S. 731, § 73, 75.) These provisions show very satisfactorily, that the legislature thought there was no warrant for examining witnesses out of court in criminal cases, and that the right to do so ought not to be given to the prosecuting officer.
There is a case of Matthews v. Port, (Comb. 63,) which, after deciding in three lines that the visitation books kept by the heralds are good evidence, has four concluding lines as follows—“ The witnesses may be examined before a judge, by leave of the court, as well in criminal causes as in civil, where sufficient reason appears to the court, as going to sea, &c., and then the other side may cross-examine them.” Mr Yiner, with his usual industry, has found a place for this dictum in his his great Abridgment; but that has added nothing to its force. (Vin. Abr., Evidence, (A. b. 32,) pi. 7.) As that was a civil suit, it is not very probable that the court made any such remark ; but if they did, there is no adjudication or practice to support it.
The court of general sessions acted without authority in ordering the examination of Mrs. Purdy, and the depositions taken before the recorder were therefore extra-judicial and void.
*300 It remains to consider these depositions as they were taken by Mr. Merritt, the committing magistrate. Our statute is not, like those of Philip & Mary, confined to cases of felony, but extends to every criminal offence; and although the defendant was only charged with a misdemeanor, the justice had authority, and it was his duty, to examine the complainant and the witnesses produced in support of the prosecution. (2 R. S. 706, § 2, 13.) If the depositions were taken pursuant to law, and have since suffered no detriment, they were properly admitted in evidence on the trial—the witness being dead. Were they taken pursuant to law 1 It is settled upon the construction of the statutes of Phil. & Mary, that the defendant must he present at the examination of the witnesses against him ; and our statute expressly provides that the examination shall be had “ in the presence of the prisoner,” (§ 13.) And if desired, his counsel may also be present. 14.) The legislature has thus carefully provided that the defendant shall have the opportunity to cross-examine, and if that right is not enjoyed, the deposition cannot be read in evidence against him on the trial. (The King v. Paine, 5 Mod. 163 ; Comb. 358, S. C. ; Woodcock’s case, 1 Leach, 500 ; Dingler’s case, 2 id. 561 ; King v. Callaghan, 1 MacNally’s Ev. 385 ; Rex v. Forbes, 1 Holt’s N. P. 597, note ; The State v. Hill, 2 Hill’s Law Rep. So, Car. 607 ; 2 Stark. Ev. 488—492 ; 2 Hawk. (by Curwood,) 594, § 24 ; 2 Russ. on Cr. 660 ; 1 Phil. Ev. 369, 372, ed. of 1839 ; Roscoe’s Cr. Ev. 50, 51 ; Bull. N. P. 241, 2 ; 1 Chit. Cr. Law, 76, 79 ; Cowen & Hill’s Notes to Phil, Ev. 938, note 369 ; The King v. Crowther, 1 T. R. 125.) The answers of the witness should be on oath. He should be first sworn and then examined, instead of taking the examination first and then swearing him to the truth of the statement. (The King v. Kiddy, 4 Dowl. & Ryl. 734.) And the deposition should be taken as nearly as possible in the words used by the witness. (1 Phil. Em. 369.) When the. direct .examination is closed, the .defendant should be allowed *301 to cross-examine at large, and the answers should be carefully set down by the magistrate. In short, the deposition should be so taken that the defendant will lose as little as the nature of the case will permit by reading the deposition on the trial, instead of having the oral examination of the witness before the jury.
In Rex v. Forbes, (1 Holt’s N. P. Rep. 599, note,) the prisoner was not present until a part of the deposition had been prepared, when he was introduced and heard the remainder of the examination; and when it was concluded, the whole deposition was read over to the prisoner. Chambre, J. rejected that part of the deposition which was prepared in the defendant’s absence. He said, “ the intention of the statute of Philip Mary is sufficiently plain. It is, that the prisoner shall be present whilst the witness actually delivers his testimony ; so that he may know the precise words he uses, and observe throughout the manner and demeanor with which he gives his testimony.” This was in 1814. Rex v. Smith, (1 Holt’s N. P. Rep. 614, 2 Stark. Rep. 208, S. C.,) was tried in 1817, and afterwards came before the twelve judges and is reported in Russ. Ryan’s Cr. Cas. 339, where the facts are more fully stated. The oath was administered to the witness before any part of his evidence was reduced to writing. The prisoner was not present wrhen the examination commenced, but was brought into the room before the last three lines of the deposition were taken down. He was then informed that the magistrates were taking the examination of the witness, and was desired to attend. The oath was again administered to the witness in the presence of the prisoner, and the whole of what had been previously written down from the mouth of the witness, was, in his presence, read over very distinctly and slowly. After this was done, the witness was asked, in the presence of the prisoner, whether what had been written was true, and what he meant to say i and the witness answered that it was perfectly correct. The magistrates then proceeded to examine the witness further ; and" after the last three lines were written, the prisoner *302 was asked whether he chose to put any questions. The deposition was then signed by the witness, and certified by the magistrates in the presence of the prisoner. Richards, C. B., before whom the defendant was tried, was of opinion that the evidence was admissible, “ since the deceased had been re-'sworn in the presence of the prisoner, and had repeated what he had stated before, and the prisoner therefore had an opportunity of cross-examining him.” Ten of the eleven judges who afterwards met to consider the case were of opinion that the deposition was properly received. Abbott, J. thought otherwise. I have been thus particular in stating this case, because it has been supposed to depart essentially from the doctrine laid down in Rex v. Forbes; but that is a mistake. In Rex v. Forbes it did not appear that the witness had been re-sworn before the deposition was read over in the presence of the prisoner. Mr. Chitty, (1 Or. Law, 80,) says, if the original information and evidence taken before the warrant was issued contain a complete case, it is the practice, after re-swearing the accuser and witnesses, to read over their former depositions in their presence and that of the prisoner, and to state to the latter that he is at liberty to ask the prosecutor and witnesses any questions respecting the charge against him. This practice may, perhaps, be tolerated, though it clearly is not the most proper course.
In this case the first and principal deposition was originally prepared and sworn in the defendant’s absence, and could not therefore be used on the trial, unless the difficulty was obviated by what took place after the arrest. And here there are several objections. Although the defendant cónsented to go with the justice to the house of Mrs. Purdy without waiting for the return of her husband with counsel, she gave the consent on being told by the justice that the only object in going was to-have the defendant identified by the witness. When they got to the house, the justice not only prepared an affidavit identifying the defendant, but he proceeded to re-swear the witness, to the original deposition, and did what, as is now said, will *303 make that paper good evidence against the defendant. Although nothing wrong was intended, I think this was not a proper course of proceeding. The husband had gone after counsel for the very purpose of having assistance on the examination, and if the defendant had been made to understand how much was to be done on this visit to Mrs. Purdy, it is highly probable that she would have declined going there until sufficient time had been allowed for the return of her husband. There was no occasion for urging the woman away with so much haste after she had desired to have counsel, and when the return of her husband might be expected within fifteen or twenty minutes. The witness, so far as appears, was not then dangerously ill, and she did not die until after the lapse of more than a month from that time. The language of the statute is, u if desired by the person arrested, his counsel may be present during the examination.” (2 R. S. 708, § 14.) A reasonable time after the arrest should be allowed for the employment of counsel, and I think the justice misjudged of his duty in proceeding to an examination before a reasonable time had elapsed for the return of the husband.
But what was this supposed examination of the witness 1' The justice did not pursue the course which was adopted in Rex v. Smith—the case on which the district attorney relies. In that case the magistrates in the first place re-swore the witness in the presence of the prisoner, and then very distinctly and slowly read over so much of the deposition as had been previously written. The witness was then asked whether what had been written was true, and what he meant to say ; and he answered, that it was perfectly correct. The magistrates then proceeded and completed the deposition. There was an examination of the witness on oath, and in the presence of the prisoner ; and when the direct examination was through, the prisoner was invited to cross-examine. How was it here 1 The justice, without swearing the witness to answer questions touching the complaint, read over the original affidavit, then prepared another, and read that, and then swore the witness to *304 both depositions in the gross. After all had been thus com pleted, the defendant was told that she could put questions. She did put questions ; but if the witness had answered falsely she could not have been convicted of perjury. She had just sworn that the depositions were true ; but she had not been sworn to answer questions at all. The whole matter was accomplished, and the parties left the house within twenty or thirty minutes after they had entered it. It will never do to hold this su.ch an examination as will make the depositions evidence against the accused. The witness was not examined ££ on oath, in the presence of the prisoner,” as the statute requires. (2 it. S. 708, § 13.) In our zeal to punish crime, great care should be taken not to make precedents which may prove dangerous to the innocent, and it should never be forgotten that even the guilty have rights which should be scrupulously regarded.
I think the justice also erred in not giving the answer of the witness to the questions put by way of cross-examination. If, as the justice understands the matter, ££ there was in point of fact but one question,” and the defendant ££ put the same question over and over again,” it is evident that the defendant thought that a very material enquiry. The justice does not deny that the questions and answers were pertinent, but he thought it was not material to put them down ; and the reason assigned is, that ££ the answer had been given before any question was put by Madam Restell, as witness considered, and was already in the affidavit.” It must be recollected that this was the first time that the witness had been confronted with the accused, and if the witness had answered the same question before, it was when she did not stand face to face with the defendant. The statute provides, that the magistrates shall proceed “ to examine the complainant and the witnesses produced in support of the prosecution, on oath, in the presence of the prisoner, in regard to the offence charged, and in regard to any other matters connected with such charge, which such magistrate may deem pertinent.” (2 JR. S. 708,113.) “ The ev *305 idence given by the several witnesses examined shall be reduced to writing by the magistrate, or under his direction, and shall be signed by the witnesses respectively.” 19.) I see nothing in these provisions to warrant the magistrate in refusing to take down the answers to pertinent questions put upon the cross-examination. If the same question is put more than once, and receives a uniform answer, one insertion in the deposition will be enough ; but I see no reason why the answer should be rejected altogether.
When the examination is produced, and the magistrate swears that it was taken in pursuance of the statute, and nothing appears to the contrary, it may be presumed that all the necessary forms were duly observed. (The People v. Moore, 15 Wend. 419.) But it may be, and was shown in this case that the deposition was not duly taken.
It was thought important on the trial to prove that there was a subsequent offer by the magistrate to examine the witnesses for the people in presence of the defendant and her counsel, and to allow a cross-examination. But this could not aid the defective depositions which had been taken ten days before the offer was made. If it was not then too late, the justice should have gone on and had an examination de novo, instead of contenting himself with making a proposition to that effect.
There is a further objection against receiving the depositions as examinations before the magistrate. They have undergone a very important alteration since they were taken by Justice Merritt, and now appear to be depositions taken in the court of general sessions. When all the judges and barons of England assembled on the trial of Lord Morly for murder, the fourth resolution which they adopted was,£C that in case any of the witnesses which were examined before the coroner were dead or unable to travel, and oath made thereof, that then the examinations of such witnesses, so dead or unable to travel, might be read, the coroner first making oath that such examinations are the same which he took upon oath, without any1 addition or alteration whatsoever.K {Kelynge’s Rep. 53,55.) And *306 Hawkins says, the deposition is admissible “ if it be made out by oath to the satisfaction of the court that the examination offered in evidence is the very same that was sworn before the coroner or justice, without any alteration whatsoever.” (2 Hawk, by Curwood) 592, § 15.) And to the same effect is 1 Chit. Cr. Law, 81. (And see Bellinger v. The People, 8 Wend. 599, per Sutherland, J.) It is impossible to say, that these are the same depositions which were taken before the magistrate, without addition or alteration.
The objection is presented in another, and a more conclusive form. The principal deposition, when offered on the trial, purported to be a deposition in the court of u general sessions of the peace in and for the city and county of New-York,” and to have been taken pursuant to an order of that court. And al ■ though the defendant excepted to the evidence, the district attorney was permitted to prove by parol that it was a deposition taken before the committing magistrate. The case comes plainly within the general rule that a written document shall not be contradicted or impeached by parol evidence. And besides, there are decisions going to the precise point under consideration. The prisoner is to be examined without being sworn In The King v. Smith, (1 Stark. Rep. 242,) the examination of the defendant was rejected because it purported to have been taken on oath, and Le Blanc, J. refused to receive evidence that no oath had in fact been administered to the defendant. A. like decision was made in Rex v. Rivers, (7 Carr. & Payne, 177 ; 1 Phil. Ev. 113,114,370.) In Rex v. Walter, (7 Carr, & Payne, 267,) the written examination of the prisoner stated that he had answered, “ I decline to say any thing$” and Lord Abinger would not allow the prosecutor to prove that the prisoner had made a confession of his guilt when under examination before the magistrate. After these papers had been turned into depositions in the court of general sessions, they could only be used for what they were worth as depositions taken in that court. They could not be reformed, by parol evidence, into depositions before the committing magistrate. In every view which I have *307 been able to take of the case, the depositions were improperly admitted.
New trial granted.

 See The People v. While, (22 Wend. 167,174, 5)