*a* vide Moore v. Dial. decided the present term. 1 Johns. cases 492 496. 9 Wheat. 532. 1 Lit. 139. 2 Des. 380.

---

### COMEGYS and PERSHOUSE v. BOOTH and BELL.

1. Where a creditor, by contract, extends the time of payment to his principal debtor, without the knowledge or consent of his surety, the surety is released.
2. In such case it need not be shown that the surety has sustained an injury; injury will be presumed.

T. W. BOOTH and W. BELL, filed their bill in Chancery against Comegys and Pershouse, in Limestone Circuit Court, in 1824, in which they charged that Falconer and Comegys had obtained a judgment against one Brice M. Garner, at September term 1821; that on the 9th of October 1821, said Garner executed an obligation to Comegys and Pershouse, to whom the judgment was transferred, for the sum of $3070 89, payable in cotton on the 15th of January 1822, to be held by them as collateral security for the payment of the judgment. To this bond the complainants, Booth and Bell, became sureties, and it was stipulated, that any payment made on the bond, should be credited on the judgment, and all payments made on the judg-

ment should be credited on the bond; they further charge that afterwards, Garner sued out a writ of error to the Supreme Court, to reverse the judgment; and that on the 30th of May 1823, Comegys and Pershouse, by their agent, made an agreement in writing with Garner, by which it was stipulated, that at the next term of the Supreme Court, to be held in June, Garner would permit the judgment to be affirmed, with ten per cent. damages; that on or before the 10th of August 1823, Garner should deliver to the agent of Comegys and Pershouse, two bills of exchange for the amount of the judgment, except the damages, drawn on a house in Baltimore, and endorsed by J. Cox and B. Harris, who were the sureties of the said Garner for the prosecution of the writ of error; one bill payable the first of May 1825; and one on the first of May 1826, and that on the said 10th of August 1823, Garner should pay to the agent one half of the damages to be adjudged by the Supreme Court. On the part of Comegys and Pershouse, it was agreed that no execution should be levied on the property of Garner or his sureties in error, unless payment of the bills was refused. The complainants charge that this extension of credit was given to Garner without their knowledge or consent; that before this contract was entered into by Garner, a judgment at law had been obtained against them, the complainants, against which they could, at law, make no defence, and which was affirmed in the Supreme Court, at June term 1824. They also allege that Garner was willing to comply with his new agreement, and did permit the judgment to be affirmed in the Supreme Court, but that Cox and Harris refused to endorse the bills, inasmuch as Garner's circumstances had become greatly embarrassed, and they preferred meeting their liability at once, if at all responsible, to extending the time of payment. Finally the complainants insist, that when they became bound as sureties for Garner, he had property in the county, amply sufficient to satisfy the judgment of Comegys and Pershouse, if they had used proper diligence; but that he had become insolvent, and unless relieved, they would be the sufferers, &c. They prayed that Comegys and Pershouse should be restrained from enforcing their judgment at law against them.

The defendants, Comegys and Pershouse, by their answer, admit that the bond was received by them as collateral security; they say it was executed at the express re-

JULY 1830.

Comegys and Pershouse
v.
Booth and Bell.

JULY 1830.
Comegys and Pershouse
v.
Booth and Bell.

quest of the complainants, to obtain indulgence for Gar-ner, who was a partner in trade of Booth; and that the complainants wholly failed to comply with their obliga-tion. They admit that Garner sued out a writ of error, and say that thereby he put it out of their power to pro-ceed on the judgment till a decision of the cause in the Supreme Court. They admit the making of the agreement between Garner and their agent as charged, but deny that it was made to prejudice the complainants; and insist that it benefitted them by producing an affirmance earlier than it otherwise could have been had. They deny that Garner was at any time, after the affirmance of the judg-ment in the Supreme Court, in such circumstances as would have enabled them to collect the amount of him; that he was then considered insolvent; they answer that they do not know, nor do they believe it material, what were his circumstances when the bond was executed; that the express object of it was to procure further time for payment by Garner, &c.

At September term 1828, the cause was tried on the bill, answer and exhibits, when the Circuit Court rendered a decree perpetually enjoining the respondents from en-forcing their judgment at law against the complainants; and from this decree the respondents appealed to this Court.

HOPKINS, for the appellants, argued, that the appellees were not dicharged, because, 1st, no delay was granted, inasmuch as the execution on the judgment was super-seded by Garner himself, and his exemption was produced by his own act. 2nd, because no longer delay, if any, was given by the arrangement, than Garner himself, by his own act, in taking out the writ of error, would have produced; he cited 18 Johns. Rep. 28.

HUTCHISON, for the appellees, argued that the arrange-ment was a new, distinct and obligatory contract, to which the sureties were no parties; that it did not provide alone for a bare extension of time, but contained a modifi-cation of the former liability, and that the appellees must rely on it alone; that the sureties in the writ of error bond had been discharged; that the parties could not be permit-ted to speculate on the chances whether a cause would be reached upon the docket in the Supreme Court or not, but for the construction of the agreement, the Court must look to the situation of the parties at the time of making the

agreement, and not depend on subsequent events. He insisted that it was immaterial if the surety had in fact been injured or not, by the extension of time; that injury would be presumed, where an extension of time was given without the consent of the surety. He cited 1 Stewart 262, 2 Stewart 63.

JULY 1830.

Comegys and Pershouse v. Booth and Bell.

HOPKINS, in conclusion, insisted that the complainants had not suffered in point of fact any injury whatever; that it was not pretended there was a meritorious defence, and therefore the agreement to affirm produced no injury; that the agreement tended, if complied with, to produce a greater security, and if not complied with, (which was to be ascertained on the 10th of August,) that fact was ascertained, and the right of the creditor to proceed on the execution, was revived, as early as by the regular result of the writ of error it could have existed without the arrangement; for, supposing the affirmance to have been obtained at the June term, execution from the Court below could not have been levied before the 10th of August, according to the usual course of proceedings; and that the execution of part of the new contract made no difference. He further insisted that the complainants could not complain of the discharge of the bail in error, because they became sureties long before the writ of error was sued out, and there was no privity between them; that no right of contribution would exist between them, and the creditor had the right to elect which security he would resort to.

By LIPSCOMB, Chief Justice. The contract between the agent for the plaintiffs, and Garner, underwent the consideration of this Court, some time ago, in a case between the same plaintiffs and Cox and Harris, the sureties of Garner, in his writ of error bond. On much consideration, it was then unanimously held, that the sureties were discharged, on the principle that a contract founded on a good consideration, giving time to the principal debtor without the consent of his sureties, discharged them from all liability. This doctrine we have since recognized in the case of *Ellis v. Bibb*, [a] and we conceive that it is too well settled now to be questioned. The plaintiffs in error have endeavored to evade its force in two ways; first, that no time was given by the contract, that execution could not have issued sooner than the 10th of August, according to the ordinary intercourse between the office of the

a 2 Stewart 63.

clerk of the Supreme Court and that of the Circuit Court. We will not hazard a conjecture as to what would have been the lapse of time, from the affirmance of the judgment at the June term of the Court, and the 10th of August; it will be sufficient to bring this case within the rule, if the creditor had, by his own contract, deprived himself of the legal right to proceed against the principal, for any period of time, however limited.

It was next contended, that an injury to the securities, by placing them in a worse condition than they otherwise would have been in, must be proven to have resulted from giving time to the principal, in order to discharge them from liability. It is well settled that no injury to the securities need be proven, they being allowed to judge for themselves, whether the new contract has secured them or not. We are therefore of opinion that the decree of the Circuit Court granting relief was proper.

Decree affirmed.

Judge TAYLOR not sitting.