## DeVENDAL vs. MALONE'S EXECUTORS.

1. Two foreclosure suits, pending in the same court, were consolidated by consent of counsel, and the second bill agreed to be taken as an answer and cross bill to the first; the first complainant admitted the validity of the second's mortgage, while the second alleged, on information and belief, that the first mortgage was intended to hinder and delay creditors, and that the debts secured by it were fictitious: *Held*, that it was incumbent on the first complainant, as against the second, to prove the existence and *bona fides* of the debt which constituted the consideration of his mortgage; and that the evidence in the case was not sufficient to prove that the notes which he paid had been given in renewal of those embraced in the mortgage, although the mortgage provided for the renewal of the secured notes.

2. The want of registration of a mortgage can only avail in favor of a subsequent mortgagee, who purchased, *bona fide*, in ignorance of it; and if he sets up that defence, he must deny notice, whether charged in the bill or not.

3. When complainant has several times examined a defendant as a witness (once in chief, and twice on cross interrogatories) without raising any objection to his competency on the ground of interest, he cannot spring that objection for the first time on the hearing.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WADE KEYES.

THE case made by the pleadings in the record is substantially as follows: Thomas Malone filed his bill on the 14th December, 1849, against Henry Leitman and Charles Bingham, to foreclose two mortgages; one executed to himself on the 21st January, 1840, by them, for his indemnity and protection as their endorser of the following notes: three held by the Bank of Mobile, one of them for $906 20, due 18th April, 1840; another for $901 06, due 18th May, 1840, and the third for $905 90, due 18th June, 1840; also one note for $1285, due sixty days after 4th December, 1839, and one for $1000, due 2d February, 1840;—which mortgage also provided for the payment of $800, for which Malone held the due bill of the mortgagors, dated May 16th, 1839. The condition of this mortgage is, that the mortgagors pay the said promissory notes and due bill, " and all such notes as may from time to time be given on renewal thereof," &c. The other mortgage was executed to John B. Toulmin, agent of Toulmin, Hazard & Co.,

on the 3d day of March, 1838, for the same premises included in the deed to Malone, to secure the payment of a large sum, which, however, had, on the 12th June, 1845, been reduced by payments to $648 49, at which time, complainant avers, he purchased said mortgage, by paying for it that sum, and took the assignment of it by said Toulmin to himself.

The notes to the Mobile Bank were renewed and reduced by partial payments, until the demand originally due upon them amounted on the 11th December, 1841, to $2,373, for which the mortgagors then gave their note, with complainant as endorser, which complainant paid on the 12th February, 1842. One of the other notes, having been also renewed from time to time, was reduced to the sum of $547 20, which was in like manner renewed and endorsed, and paid by Malone on the 8th day of January, 1842. These payments, with the $800 due bill, and the balance paid on the Toulmin mortgage, are insisted upon by the bill as subsisting demands chargeable upon the mortgaged premises, and prayed to be paid to the complainant by a sale under a decree of foreclosure.

In January, 1850, Leitman answered the bill, admitting the execution of the mortgages and the indebtedness as charged ; but insisting that the amount due, if anything, was very small, inasmuch as Bingham, his late partner, had obtained his written agreement, in 1842, for the rent to be paid to Malone, to be applied to the demand, and that the property had been managed by Bingham, the son-in-law of Malone, ever since that time ; and he believed the rents had been received by him as agent of Malone, and accounted for. He further states, that a mortgage was executed on the same premises to Robertson, Beale & Co. for a large amount, which has been assigned by them to one Batre ; that he and his said late partner, owing a number of debts, had applied for and obtained a discharge in bankruptcy, the certificate of which he exhibits with his answer ; that the assignee in bankruptcy had never sold his equity of redemption, and that he (Leitman) disclaimed all interest in the suit.

On the 14th March, 1851, Malone having in the meantime departed this life, a bill of revivor was filed by Charles Bingham, Thomas King, and Thomas Malone, sr., executors of said complainant, by which, after setting forth the proceedings

had by the parties to the original suit, they aver that Bingham admits the complainant's right to the decree prayed for, and concedes the facts stated in the bill, and also pray that said Bingham's name be stricken out as one of the defendants to the bill, and that he be allowed, as one of the executors of Malone, to become a complainant. The bill of revivor also states, that DeVendal and Batre claim some interest in the mortgaged premises under a subsequent incumbrance, and prays that they may be made defendants to the original bill and bill of revivor, and that they answer the same, &c.

In January, 1850, DeVendal and Batre filed their bill in the same court to foreclose a mortgage upon the same premises, executed by Leitman & Bingham to Robertson & Co. on the 15th January, 1840, to secure the payment of certain notes due to the mortgagees, amounting to $5,273, which notes and mortgage were assigned by Robertson & Co. to Batre, and by Batre to one West, as trustee, for the benefit of his creditors. West having died, DeVendal was appointed trustee in his stead by the Chancery Court. Malone was made a party defendant to this bill, and the bill charges, on information and belief, that Malone's mortgage "was without any consideration, and that the indebtedness therein mentioned is wholly fictitious; that the object of said mortgage was, to hinder and delay creditors; that there are no such notes as described in said mortgage in the possession of any of the said defendants, or in existence; and for this reason, complainant is of opinion, that if ever such indebtedness existed between the parties, it had been paid or settled, and the lien of the mortgage thereby released." It also insists, that if such indebtedness ever existed, the rents and profits received by Bingham, the agent and son-in-law of Malone, who occupied a portion of the property and rented out the remainder, was amply sufficient to satisfy the same.

Malone answered this bill, admitting the execution of the mortgage, and the justness of the demands secured by it; reasserting the validity of his own mortgages as stated in his bill, and denying the agency of Bingham in taking possession or renting the mortgage premises for his benefit; also denying all fraud. Having died after filing his answer, a bill of revivor was filed, and the suit ordered to stand revived

against Bingham and King, as his executors. They answer the bill, denying the agency of Bingham, and re-asserting the validity of Malone's mortgages.

By an agreement between the counsel, the bill of DeVendal was allowed to stand as a cross bill and an answer to the bill of Malone.

A reference was made to the register to take an account of what was due to the complainants in each cause, and to consider and report what deductions should be made on account of payment of rents received by either party. He reported, giving the priority to the Malone mortgage, and ascertained that the sum of $4,440 15 was due thereon, being the amount of the $2,373 note due to the Mobile Bank, with interest, and excluded the other demands, as also the sum paid on the Toulmin mortgage, because Robertson & Co., the subsequent mortgagees, had no notice of that mortgage. He also reported the debt due, as secured by the Robertson & Co. mortgage, at $10,053 94, and charged Malone with the receipt of $115 rent, and interest thereon to 23d January, 1853, amounting to $110.

Both the parties filed exceptions to this report. Malone's executors, because, 1st, the Toulmin note and mortgage were excluded for want of registration, when the objection was not taken in the pleadings; 2d, for refusing to allow the $800 note described in the mortgage to Malone; 3d, because the master charged Malone with rent; 4th, the master erred in taking any notice of the claim of DeVendal; 5th, in failing to allow the claim of Malone as stated in the answer of Bingham. DeVendal excepted, 1st, because the master allowed the Malone mortgage as a charge on the premises; 2d, because he erred in giving it priority over DeVendal's; 3d, in allowing the $2,373 note and interest; 4th and 5th, in not charging Malone with greater rent; 6th, in holding that Malone had paid any of the debts of Leitman and Bingham, for which he was bound as endorser. Upon hearing these exceptions, the register overruled all those filed by Malone's executors, as well as those filed by DeVendal, except as to the rent, which he increased, charging Malone with three quarters, instead of one quarter.

An appeal having been taken to the chancellor from the

decision upon the exceptions by the master, the first exception, which objects to the exclusion of the notes and mortgage made to Toulmin, was sustained, and the other exceptions were held to be well determined by the master. Thereupon the court ordered the report to be corrected, which was accordingly done, and the amount due to the complainant in the original bill was set down at $6,140 61, less rents received $662 30, and the demand to DeVendal at $10,525 33 ; and a final decree was rendered upon the confirmation of this last report, giving Malone's mortgage the preference. To revise this decree the case is brought to this court, and the following errors are assigned :

1. The chancellor erred in sustaining Malone's first exception to the master's report.

2. In overruling DeVendal's first, second, third, fourth and sixth exceptions to the report.

3. In sustaining the master in the amount charged to Malone as rents.

4. In the re-reference to the master.

5. In the final decree declaring the priority of Malone's mortgage over DeVendal's.

6. In referring it to the master to decide upon the equities of the parties.

JNO. T. TAYLOR, for the appellant.
R. H. SMITH, contra.

CHILTON, C. J.—The two cases having been consolidated by the consent of the respective counsel, and the bill of De-Vendal, by their agreement, being taken as a cross bill and an answer, we must regard it, when considered as an answer, in the same light as we would an answer formally put in. But allowing the appellees the benefit of thus considering the cross bill, we think, that after applying to it the most stringent rules, it puts the complainants in the original bill upon proof of the consideration of their mortgage. The answer is, that these demands were unreal,—fictitious,—and that the mortgage to Malone was designed to delay, hinder and defraud creditors. On the other hand, Malone admits the demands secured by the mortgage to Robertson & Co. Under such circumstances, it was incumbent on the executors of

Malone to prove the *bona fides* and existence of the demands which constituted the consideration of the mortgage, and this was not done by the mere production of the notes specified in the mortgage. It has been several times held, that, as against a creditor, the consideration of a note which is impeached for fraud is not shown by the note itself, nor by the recitals in the deed of conveyance. These are but the written admissions of the debtor, which may be manufactured by him in further-ance of a contemplated fraud.—Nolen & Thompson v. The Heirs of Gwynn, 16 Ala. Rep. 725; McGintry *et al.* v. Reeves, 10 *ib.* 137; Pennington v. Woodall, 17 *ib.* 686; Falkner v. Leith & Jones, 15 *ib.* 9. We would not be understood as in-timating that any attempt to make such evidence exists in the case before us; we allude to it merely as showing that the law cuts off the parties from such temptations, by giving to admissions of this character no weight except as sustained by proof *aliunde* of a valid consideration.

Applying the principle to the case before us, we feel con-strained to hold, that the evidence is not sufficient to sustain the demand for money paid as surety of Leitman & Bingham by Malone. The proof fails to show that the notes last en-dorsed by him and paid had any connection with the notes embraced in the mortgage; and. although it may be quite plausible to say that Malone would not have endorsed a de-mand creating a new liability upon him for Leitman & Bingham, who had been discharged as bankrupts in 1842, and although the testimony of Greene shows that some notes of Leitman & Bingham, with Malone as endorser, were discounted in bank between the date of the notes described in the mort-gage and the 11th December, 1841, when the note for $2,373 was executed, it fails to show any such demands due to the Bank as those described in the mortgage, nor does the Bank record furnish any evidence of such notes having belonged to it. This proof, therefore, utterly fails to show any connec-tion between the note paid by Malone and those which are set out as the consideration of the mortgage.

Neither does the deposition of Leitman materially aid the complainant. He knows that the Bank held a note of Leit-man & Bingham, which was payable to, and endorsed by, Malone; and to the best of his recollection, the note was

given upon renewal of notes made by the same parties, but he is unable to state the amounts or dates of any of the notes, or who paid the last named note ; he *presumes* that Malone did. This proof is insufficient to establish the fact charged in the bill, that the $2,373 note was given upon a renewal of the demands due to the Bank, as shown in the mortgage, especially in opposition to the denial of the answer.

As to the Toulmin mortgage, the *bona fides* of the demands secured to be paid by it was not put in issue by the answer, or cross bill, and we think the proof as to that is sufficient. The objection to it, that it was never recorded, could only avail in favor of the subsequent mortgagee, if he purchased *bona fide*, in ignorance of it ; and the rule requires that a subsequent purchaser or mortgagee, who seeks to shelter himself under this defence, must explicitly deny such notice, whether it be charged in the bill or not.—Story's Equity Pl. § 662 ;- Gallatin v. Cunningham, 8 Cow. R. 361-374 ; Prec. in Chy. 226; 2 Pr. Wms. 491; 1 Johns. Ch. R. 302 ; 3 *ib.* 345. The want of notice is not relied upon in the pleadings, and it follows that the chancellor very properly held this mortgage to be a charge upon the property.

As to the $800 note, there is no evidence of its consideration, and under the rule first mentioned, it was properly rejected.

In regard to the rents, we are not prepared to say that the evidence shows that more should have been charged against Malone than the register charged against him. As, however, the case must go back to the register, we would not be considered as expressing an authoritative opinion upon this point.

As to the competency of Leitman as a witness : The order allowing his examination reserves no objection to be taken to his proof on the trial. This may have resulted from the fact, that the complainant had made him his witness. Be this as it may, we do not think it should be allowed the complainant, after having examined him in chief, and twice upon cross interrogatories, without raising any objection on the ground of interest, to spring that objection for the first time upon the trial. The obvious tendency of such practice would be, to take parties who were reposing upon such testimony by surprise.

For the errors above noticed, the decree of the chancellor must be reversed, and the cause remanded, to be referred back to the register to take an account in accordance with the views contained in this opinion.