Bóyd v. Beck.

| 29 | 703 |
| 96 | 234 |
| 29 | 703 |
| 102 | 614 |
| 29 | 703 |
| 129 | 387 |

## BOYD *vs.* BECK.

[BILL IN EQUITY FOR FORECLOSURE OF MORTGAGE ON PERSONAL PROPERTY.]

1. *Domicile.*—A temporary absence from the county of one's fixed domicile, on business or pleasure, with the intention of returning, and an actual return in accordance with such intention. do not work a change of domicile. .

2. *Mortgage not affected by renewal of note.*—The renewal of a note or bill of exchange, secured by mortgage, is neither a payment nor a discharge of the lien of the mortgage.

3. *Nor by second mortgage on same and other property.*—A second mortgage, on the same and other property, postponing the law-day fixed by the first, does not destroy the lien of the first.

4. *Registration and notice.*—Actual notice of a prior unrecorded mortgage dispenses with the necessity of registration : a party who, with such actual notice, takes a conveyance of the mortgaged property, can claim no advantage, as against the prior mortgagee, on account of the want of registration.

5. *Who are creditors and purchasers under act of 1828.*—Taking a second mortgage as a further security of a pre-existing debt, without incurring any new liability, or parting with anything valuable, does not constitute the mortgagee either a creditor or purchaser under the act of 1828. (Clay's Digest, 255, § 5.)

6. *Adverse possession as between mortgagor and mortgagee.*—The statute of limitations does not begin to run against a mortgagee out of possession, as in favor of the mortgagor or his vendee, even after the law-day has passed, until there is some overt act, or open assertion of adverse title, because the latter are presumed to hold in subordination to the title of the mortgagee ; and if a second mortgagee recover the property (personal) by suit from the mortgagor, and afterwards purchase at his own sale, the first mortgagee is not barred of his right of foreclosure, at least until after the expiration of six years from the sale.

7. *Presumed satisfaction of mortgage debt.*—Where a mortgage, given to secure an accommodation endorser in bank, became forfeited in 1838, while the bank debt was extended, from time to time, until 1842, and reduced to judgment in 1843; the balance due on the judgment being paid by the mortgagee in January, 1845,—*held*, that the mortgage debt could not be presumed satisfied, so as to bar the right of foreclosure, at least until the expiration of six years from the time of this payment.

APPEAL from the Chancery Court of Macon.
Heard before the Hon. JAMES B. CLARK.

THE material facts shown by the record are these :

On the 10th February, 1838, one Bushrod W. Bell, then a resident citizen of Montgomery county, drew his bill of exchange for $7,000, at six months, on Edward Hanrick, which was accepted by said Hanrick, and endorsed by James C. Boyd and Thornton Taliaferro, for the accommodation of said Bell, and was afterwards discounted by the Branch Bank at Montgomery ; and on the 28th March, 1838, to secure these parties against their liability on this bill, said Bell executed to said Boyd and Taliaferro a mortgage, containing a power of sale in the event the bill was not paid at maturity, on a tract of land, known as the " Lee place," and containing about 535 acres, and seven slaves. This mortgage was duly acknowledged and recorded, within thirty days

after its execution, in Montgomery county. The bill of ex-
change was not paid at maturity, but was afterwards renewed,
from time to time, as follows : By bill for $7,000, at six
months, dated 13th August, 1838, drawn by Benjamin J.
Gause, accepted by Bell, and endorsed by Boyd and Talia-
ferro ; this by another bill for $7,278 29-100, at six months,
dated February 16, 1839, drawn by Bell, accepted by Gause,
and endorsed by Boyd and Taliaferro ; and this by a bill for
$8,751 31-100, drawn, accepted, and endorsed as before,
which included another debt of $1,000, evidenced by Bell's
bill for that amount, dated October 19, 1838, at ninety days,
accepted by said Gause, and endorsed by Boyd and one
Adam Felder. On the 30th September, 1839, for the purpose
of further protecting and securing Boyd and Taliaferro
against their liability on this last bill of exchange, Bell exe-
cuted to them another mortgage, ' with a power of sale, on
the same land and slaves covered by the first mortgage, and,
in addition thereto, about twenty more slaves ; which mort-
gage, within thirty days after its execution, was regularly
proved and recorded in Montgomery county. This last bill
of exchange, at maturity, was renewed by another for
$8,751 80 100, at twelve months, dated 1st March, 1841,
drawn by Bell, accepted by Gause, and endorsed by Boyd
and Taliaferro ; and this again not being paid, the Bank re-
covered a judgment thereon against Boyd, at the fall term,
1843, of the circuit court of Montgomery county, for the sum
of $10,405 87-100.

After the execution of the mortgage first above described,
and some time in the spring of 1839, Bell removed from
Montgomery to Talladega county, carrying with him his
family, negroes, and other property, and kept the hotel at
" Talladega springs" during the summer of 1839, while he
farmed with his slaves in the vicinity ; and one of the ques-
tions in the case is, whether this removal operated a change
of residence. Late in the fall (the precise time nowhere ap-
pears) he returned to Montgomery, and resided there con-
tinuously until his death, which occurred in 1845. Neither
of the mortgages above mentioned was ever recorded in
Talladega.

On the 17th August, 1839, while in Talladega, Bell there

executed to Pharr & Beck, then parties in trade, a mortgage on the slaves which he had carried with him, with a power of sale, to secure the payment of six promissory notes, falling due on the 1st January, in the years 1840 to 1845. This mortgage was duly proved and recorded, within thirty days after its execution, in Talladega county, but was never recorded in Montgomery ; and it is proved by two witnesses, that Pharr & Beck, at the time of its execution, had actual notice of the previous mortgage to Boyd and Taliaferro. In 1843, the notes secured by this mortgage not having been paid as they fell due, Pharr .& Beck instituted a suit against Bell, in the circuit court of Talladega. for the recovery of the negroes conveyed by the mortgage, and recovered a judgment against him on the 29th November, 1844 ; and on the 27th December, 1844, under an execution on said. judgment, the sheriff delivered the slaves into their possession. On the 3d February, 1845, under the power of sale contained in their mortgage, Pharr & Beck advertised the slaves, pursuant to the terms of the mortgage, and sold them at public outcry, becoming themselves the purchasers of all except one ; and this one. who was knocked off at the sale to H. P. Watson, and afterwards sold by him to L. E. Parsons, was recovered by Boyd in an action at law, together with $268 damages.

The bank debt, which was reduced to judgment as above stated, was paid as follows : On the 29th January, 1845, Boyd paid $6,367 32, being the proceeds of a note on Wm. J. Howard ; and the balance, $3,807 24, was paid by Bell, in May, 1845, being the proceeds of a note on H. P. Caffey. The debt was also filed by the bank as a claim against the estate of Taliaferro, which was insolvent; and Boyd afterwards received some payments from that source. There are other matters of account, which, however, require no particular notice.

On the 1st January, 1851, Boyd filed his bill against Beck, and other persons who had possession of the negroes, asking a foreclosure of his two mortgages, and an account of the mortgaged property. Beck answered the bill, setting up his own mortgage, and insisting that it was entitled to priority over Boyd's, because the latter's were not recorded in Talladega when the slaves were removed to that county ; alleging

that the bank debt, on which Boyd was bound, had been fully paid and discharged by Bell ; demurring to the bill, on the ground that it showed, on its face, that complainant's claim was barred by the statute of limitations ; and insisting on the same defense by way of plea.

On final hearing, the chancellor dismissed the bill, on the ground that, from lapse of time and other facts in the case, the mortgage debt must be presumed satisfied ; and his decree is now assigned as error.

JAMES E. BELSER and H. C. SEMPLE, for appellant, made these points : 1. The frequent renewal of the bills of exchange does not affect the validity of Boyd's mortgage.—Cullum v. Branch Bank at Mobile, 23 Ala. 797 ; Conner v. Banks, 18 Ala. 42.

2. Giving collateral security no extinguishment of lien, and no duty imposed to make it available.—Hynes v. Rogers, Litt. Sel. Cases, 229.

3. Boyd was made a creditor by Bell's contingent liability to him.—Foote v. Cobb, 18 Ala. 587.

4. An unrecorded mortgage, even when executed in another State or county, is good with notice.—Smith's Heirs v. Branch Bank at Mobile, 21 Ala. 125 ; Dearing v. Watkins, 16 Ala. 20.

5. If there was no change of residence by Bell to Talladega, the mortgage to Pharr & Beck is void as to creditors, because it was not recorded in the county of Bell's residence. Clay's Digest, 255–6, §§ 4, 5. The words " settlement in the county to which the property is removed," as used in the statute, mean a change of residence to the county ; and the proof shows that Bell never changed his residence to Talladega. As to the question of domicile, see Hallett v. The State, 8 Ala. 159 ; Leach v. Pillsbury, 15 N. H. 137 ; Inhab. Fitchburg v. Inhab. Winchendon, 4 Cushing, 190.

6. The statute of limitations which bars detinue, is no answer to the claim of the mortgagee against the mortgagor in possession.—Benje v. Creagh, 21 Ala. 156 ; Cullum v. Branch Bank at Mobile, 23 Ala. 797 ; Pinkston v. Brewster & Co., 14 Ala. 315 ; 10 Yerger, 376 ; Doe v. McLoskey, 1 Ala. 711 ; 1 Dana, 286 ; 2 Greenl. R. 132, 173, 387. Pos-

session of the mortgagor, or derived from him, not adverse to the mortgagee under the circumstances.—Herbert v. Hanrick, 16 Ala. 585 ; Foster v. Goree, 5 Ala. 424 ; 3 Peters, 47. The statute may bar the debt, and yet not affect the remedy. 23 Ala. 797 ; 2 Sm. & Mar. 697 ; 19 Pick. 535 ; 14 Peters, 19.

Watts, Judge & Jackson, contra.—I. The bill is demurrable, because on its face the complainant is barred of any recovery by lapse of time. It is not necessary to plead the statute of limitations, or to rely on lapse of time in the answer, if, on the face of the bill, the remedy sought to be enforced is barred by lapse of time analogous in extent to the statute of limitations at law.—Story's Equity Pleadings, §§ 484–5, 503, note 4 ; Humphres v. Terrell, 1 Ala. 650. If there be anything to take the case out of the statute, or to relieve it from lapse of time, it must be alleged in the bill.— Authorities supra. Courts of equity adopt the rule governing courts of law under the statute, and the time sufficient to bar a suit, short or long according to the subject-matter.—Johnson v. Johnson, 5 Ala. 97 ; Humphres v. Terrell, 1 Ala. 653–5 ; Sims v. Canfield, 2 Ala. 561–5 ; Wood v. Wood, 3 Ala. 761 ; Van Hook v. Whitlock, 7 Paige, 379 ; Humbert v. Rector, 7 Paige, 195 ; Kane v. Bloodgood, 7 Johns. Ch. 90.

The statute of limitations commenced running in this case, in favor of Bell, and against Boyd and Taliaferro, whenever, by the terms of the mortgage, the mortgagees had the right to demand and recover the possession of the mortgaged property. Whenever a right of action accrued for the negroes, then the statute of limitations at law commenced running.—Governor v. Stonum, 11 Ala. 679, and authorities there cited for plaintiff in error ; also, Hopper v. Steele, 18 Ala. 828. That Boyd might have maintained detinue for the negroes, see Humphres v. Terrell, 1 Ala. 655 ; Pharr & Beck v. Bell, 7 Ala. 807. It is admitted, that the statute did not commence running, until an adverse possession on the part of Bell was shown ; but when did the adverse possession begin ? What is meant by adverse possession ? What idea does the law attach to the possession of property ? Occupancy, or possession, is the origin of title. When one person is in possession of property, the law says, in the absence of

any other fact, that the title is with the possession, and that the person in possession is the owner of the property. It necessarily results, that every possession, in the absence of any fact explaining its character, must be adverse to all the world. To deny this, would be to deny that possession is evidence of title. Now Bell is found in possession of the negroes. In the absence of any proof showing the character of his possession, the law presumes that he is the owner of the negroes; and this presumption is absolute and conclusive, in the absence of any other testimony. Boyd, however, shows a mortgage on the negroes, given to him by Bell. When this is shown, the law looks to the mortgage, and finds that Bell's possession is qualified and explained by it; in other words, that Bell holds in subordination to Boyd's title under the mortgage. So long, then, as Bell's possession is consistent with Boyd's right under the mortgage, Bell's possession is not adverse to Boyd. His possession is perfectly consistent with Boyd's right under the mortgage, until the mortgage becomes forfeit; but as soon as this happens, if Bell still retains the possession, the mortgage ceases to explain or qualify that possession: his possession is then inconsistent with Boyd's rights, and must necessarily be adverse to Boyd. Something *dehors* the mortgage must then be shown, to destroy this presumption of adverse possession. Any thing which shows that Bell still recognizes Boyd's rights under the mortgage, would rebut the idea of adverse possession; but nothing is alleged in the bill, showing a recognition of Boyd's rights within six years before it was filed.

Except in cases of trusts, which are exclusively the creatures of a court of equity, and of which courts of equity have exclusive jurisdiction, it is not necessary, to make an adverse possession, that there should be an open assertion and notice of adverse title. In all cases where there is a remedy at law for the same subject-matter, the possession, whenever it is inconsistent with the right of the other party, is, unless explained, necessarily adverse.—Bloodgood v. Kane, 7 Johns. Ch. 90, in which all the authorities, English and American, are examined, with great power and clearness, by Ch. Kent.

The mortgage, after the forfeiture, does not explain the

possession of the mortgagor. His possession must be considered adverse to the mortgagee, unless a recognition by the mortgagor of the mortgagee's subsisting rights is proved. If these views are not correct, when, it may be asked, at what time, would the statute of limitations commence running in favor of the mortgagor? The relation of mortgagor and mortgagee is not such as that of trustee and *cestui que trust*.—2 Story's Equity, p. 278, note 2 ; Angell on Limitation, 503, § 20 ; *ib*. 490, §§ 7–10 ; Cholmondely v. Clinton, 2 Jac. & W. 1.

In speaking of mortgages of real estate, it is said by Judge Story, (Equity Jur., vol. 2, § 1028 *a*,) that the mortgagor would be barred after the lapse of twenty years ; that being the time within which a right of entry would be barred at law. See, also, Gunn v. Brantley, 21 Ala. 644, where the same doctrine is held. The mortgagee of real estate is barred by the same length of time from foreclosure.—2 Story's Equity, §§ 1028 *b*, 1031 ; Giles v. Baremore, 5 Johns. Ch. 548. As to personal property, the time is the same that would bar a suit at law.—Humphres v. Terrell, 1 Ala. 653 ; Sims v. Canfield, 2 Ala. 561 ; Wood v. Wood, 3 Ala. 761. Whenever the legal estate is barred, the equitable estate is also barred.—Angell & Ames, 504, § 21 ; 1 McCord Ch. 176 ; *ib*. 310.

II. Upon the bill, answer and proof ; and, first, as to the statute of limitations : The bill calls on Beck to answer when and where he received the negroes into his possession. He answers, that he obtained the possession of them on the 27th December, 1844 ; and this was more than six years before the filing of the bill. If the statute of limitations did not commence running against Boyd before, it certainly commenced after Beck obtained the possession of the negroes.— See authorities above cited.

2. The first mortgage made by Bell to Boyd and Taliaferro, was satisfied and discharged, by taking new bills of exchange, with new parties.—Lowry v. Murrell, 2 Porter, 283 ; Trotter v. Crockett, 2 Porter, 406 ; Billingslea v. Harrell, 11 Ala. 781 ; Lee v. Fontaine, 10 Ala. 755 ; Jones v. Dougherty, 10 Geo. 273 ; Bicknell v. Trickey, 34 Maine, 273 ; Lambard v. Pike, 33 Maine, 141. That the first mort-

gage lost its lien by taking the second, see Billingslea v. Harrell, *supra ;* Wallace v. Long, 16 Ala. 739 ; Rowley v. Rice, 10 Metcalf, 7.

3. Pharr & Beck's mortgage took precedence of Boyd's second one. At the time Beck's mortgage was taken, Bell's residence was in Talladega, as shown by the testimony of Philpot and Henry. Boyd's mortgages were never recorded in Talladega, where the negroes were removed from Montgemcry, and where they ever afterwards remained. Pharr & Beck were purchasers for valuable consideration in 1839, after the negroes had been more than six months in Talladega.

4. The proof shows that Boyd has been more than repaid the amount which he had to pay for Bell. He obtained " the Lee place" in Montgomery, and had it for many years ; and this was worth, exclusive of rents, $4,000. Caffey's note paid $3,800. He obtained decrees against Taliaferro's estate to the amount of $4,500, and the proof shows that he must have collected them. Farley paid him $250, and Watson and Parsons more than $1,000. These items make an aggregate of more than $13,000.

STONE, J.—In the case of the State, *ex rel.* Spence, v. The Judge of the 9th Judicial Circuit, 13 Ala. 805, it was decided, that " where one has acquired a fixed domicile, a temporary absence on business or pleasure, with the intention of returning, and an actual return in accordance with such intention, will not work a change of domicile."—Sears v. The City of Boston, 1 Metcalf, 250 ; Bempde v. Johnstone, 3 Vesey, jr., 198. Where persons conduct a business at two or more places, devoting a portion of their time to each, the *intention* of such persons, when it can be ascertained, exercises a controlling influence in determining the domicile.— Story on Conflict of Laws, § 47 ; Howard College v. Gore, 5 Pick. 370 ; Somerville v. Lord Somerville, 5 Vesey, 787–8–9.

The only evidence of a change of Mr. Bell's domicile, at a time material to the rights of these parties, is that of the witness Philpot. He was, no doubt, honest in his convictions ; but his testimony is greatly outweighed by that of the numerous witnesses on the other side. Our conclusion is,

that on the 28th March, 1838, and until after the close of the year 1839, Mr. Bell was a citizen of Montgomery county.

The testimony of the witness Whiting shows, that each bill of exchange, after the first, was taken by the bank in renewal of the original debt. We consider it well settled in this State, that the renewal of the evidence of the debt is neither a payment, nor a discharge of the lien of the mortgage.—Moore v. Spence, 6 Ala. 506 ; Conner v. Banks, 18 Ala. 42 ; Cullum v. Branch Bank of Mobile, 23 Ala. 797 ; Alston v. Alston, 2 Hill's (S. C.) R. 362; Lee v. Fontaine, 10 Ala. 765.

Whether the mortgage of the 30th September, 1839, was a release and satisfaction of that bearing date 28th March, 1838, presents a graver question. In Billingslea v. Harrell, 11 Ala. 775, this court held, that a mortgage creditor, who takes a second mortgage, on the same and other property, extending the law-day to a period beyond the time stipulated in the first, thereby binds himself not to proceed on the first. On the authority of this case, it is here contended, that the appellant discharged the lien of his first mortgage by taking the second. The argument, though plausible, is not sustained by the case of Billingslea v. Harrell, *supra*. The supreme court of New York, Cowen, J., delivering the opinion of the court, in a case involving the precise point here raised, held, after an elaborate examination of authorities, that a second mortgage on the same property, to secure the same debt, and extending the law-day, was not a discharge of the lien of the first.—Gregory v. Thomas, 20 Wend. 17. We assent to the reasoning on which the above case rests, and hold, that the lien of the first mortgage was not destroyed by the execution of the second. It operated only a postponement of the law-day.—Alston v. Alston, *supra;* Lee v. Fontaine, *supra.*

It is contended for appellees, that the property conveyed by the first mortgage from Bell to Boyd and Talliaferro was carried by Bell to Talladega county, and that said property became liable for the debts to them there contracted, because the mortgage was not recorded in the office of the clerk of the county court of Talladega county, pursuant to the statute. Clay's Digest, 255, § 4. We will not stop to inquire whether Pharr & Beck are creditors within the meaning of this statute. The testimony of the witnesses Williams and Wilkins shows,

that Pharr & Beck had notice of this mortgage before they received their conveyance ; and hence they were not creditors without notice. In the case of Dearing v. Watkins, 16 Ala. 20, this court said, " The object of registration laws is to give *notice*, that subsequent purchasers and creditors be not deceived ; and if one purchase with actual notice, he is in possession of that information which the statute intended to place within his reach." Dargan, J., thought this question had been so often determined, that it was not open to controversy.—Dearing v. Watkins, *supra*. We concur in the opinion that registration is only necessary, as a means of giving notice ; and that when the reason fails, the statute does not apply. See on this point the following authorities : Smith v. Branch Bank at Mobile, 21 Ala. 125; Smith v. Zurcher, 9 Ala. 208 ; Bolling v. Carter & Womack, 9 Ala. 921 ; Walker v. Miller, 11 Ala. 1067 ; Ohio Life Insurance Co. v. Ledyard, 8 Ala. 866. The defendant Beck does not deny notice of the former mortgage. This is equivalent to an admission of notice.—DeVendal v. Malone, 25 Ala. 272.— We hold, then, that Beck can claim no advantage as a *creditor* under the first section of the act of 1823.—Digest, 255, § 4.

The residence of Bell at the date of the mortgage to Pharr & Beck, August 7, 1839, being in Montgomery county, the act of 1828 required that such mortgage should be recorded in that county, within thirty days after its execution ; and in case of failure, declares that " the same shall be void against creditors and subsequent purchasers without notice."—Digest, 255, § 5. Was Boyd, in taking the second mortgage, either a *creditor* or a *purchaser* within the meaning of this statute ? We think not. He parted with nothing valuable, and incurred no new liability, as a consideration for said second mortgage. It was executed by Bell as a further security of a pre-existing debt. In such case, Boyd stands in no better position, as to latent equities, than Bell himself occupied.— Andrews & Bros. v. McCoy, 8 Ala. 920 ; Padgett v. Lawrence, 10 Paige, 170 ; Dickerson v. Tillinghast, 4 Paige, 215; Bank of Mobile v. Hall, 6 Ala. 639.

We hold, then, that the only claim of appellant, Boyd, which can assert a superior lien over the rights of defendant Beck, is the debt secured by the first mortgage. The claim

46

of Boyd under the second mortgage, is subordinate to that of Beck under his mortgage.

We cannot, on the facts of this case, perceive any foundation on which to rest the plea of the statute of limitations. It has been expressly held in this court, that the mortgagor and his vendee hold in subordination to the title of the mortgagee; not adversely to him. Hence, in such case, the statute does not run, even after the law-day has past.—Herbert v. Hanrick, 16 Ala. 581 ; Foster v. Goree, 5 Ala. 424. There is much good sense in this rule. Until foreclosure, the mortgagor owns the equity of redemption. This he may alien, or transfer to another. It cannot be known, without some overt act, *throwing off allegiance*, that the mortgagor or his vendee is not quietly enjoying the possession of the equity of redemption, at all times acknowledging the rights of the mortgagee. We feel satisfied in declaring, that there was no adverse holding, at least until the sale under the mortgage to Pharr & Beck. See Bryan v. Weems, at the last term.

We do not wish to be understood as declaring that there is no limit beyond which a mortgagee out of possession cannot maintain an action.—See 2 Story's Equity, § 1028 *b*. All we decide is, that the right is not barred in this case ; the interval between the sale by Pharr & Beck and the commencement of this suit being less than six years.

In holding that the law presumed a satisfaction in this case, we think the chancellor erred. In the language of the witness Whiting, the original debt was renewed, or extended, at various times ; the last renewal or extension being in 1841, due at twelve months. In 1843 the debt was put in judgment. On 29th January, 1845, partial payment was made on the debt, being proceeds of the note of W. J. Howard, amounting to $6,367 32. The balance, $3,807 24, was paid in May, 1845, being proceeds of note of H. P. Caffey. In the case of Carpenter v. Devon, 6 Ala. 718, it was decided, that reducing a debt to judgment does not destroy the relation of principal and surety.—See, also, Comegys & Perhouse v. Booth & Bell, 3 Stewart, 14 ; Clay's Digest, 206, § 23. The payment made by Boyd 29th January, 1845, gave him a present right of action at law against Bell. That action was not barred by limitation until six years afterwards ; say,

January 29th, 1851.   Before that time arrived, this suit was instituted.   We know of no principle of equity which authorizes us to presume, as a *legal conclusion*, the satisfaction of a debt, on lapse of time short of the limitation at law.   In Cullum v. Branch Bank at Mobile, our predecessors held, that the bar of the debt by the statute of limitations did not destroy the lien created by the mortgage.—See 23 Ala. 798. True, that was real estate, requiring a much longer time to perfect a bar, than is required to bar debts by simple contract. But it is certainly an authority against the presumption of satisfaction in law, which the chancellor indulged in this case.

We need not, and do not, now announce what would be our opinion, if, to the long acquiescence of Boyd in the possession of Bell and those holding under him, there was added *the other fact*, that the debt itself was barred by the statute of limitations.   It will be sufficient to meet that point when it arises.—See Johnson v. Johnson, 5 Ala. 90 ; Humphres v. Terrell, 1 Ala. 650 ; Sims v. Canfield, 2 Ala. 555 ; Bryan v. Weems, at the last term.

For the error above pointed out, the decree of the chancellor must be reversed, and the cause remanded.

We think it best to lay down certain rules to be observed in taking the account.

The record contains no evidence that Bell had any connection with the payment made with the proceeds of Howard's note.   We suppose Boyd is entitled to the benefit of this payment.   We are satisfied the Caffey note was received from Bell, and Boyd cannot rightfully claim any reimbursement on account of that claim.

The mortgaged property is responsible for so much of the original debt of $7,000, with its interest, as was paid by Boyd. So much of the debt as was caused by the incorporation of the bill for $1,000 with the main debt, at the renewal, August 19, 1839, with its interest, is not a proper charge against the property in the hands of Beck.   The amount properly chargeable on the property can be ascertained, by subtracting from the sum actually paid by Boyd the *pro rata* share representing the $1,000 and its interest.   This will show the proper debit against the property.

In making this estimate, another point must be guarded.

The Caffey note, not being embraced in either mortgage, must be regarded as a payment by Bell on general account. No direction appears to have been given as to its application. It must, then, be considered as a payment on the entire debt. In other words, its proceeds must be applied, *pro rata*, on the two original demands of $7,000 and $1,000. This will operate a ratable reduction on each item.

This will be subject to the following credits :

1. The Lee tract of land. If this tract was sold by Boyd pursuant to the directions contained in the mortgage, the proper charge, on this account, will be the price it commanded. If the tract of land was not sold by Boyd within a reasonable time after he had obtained possession, but he retained the land as his own, then he is chargeable with its value at the time he obtained it, or the amount for which it was sold, at the option of Beck.

2. The hire, or damages, recovered of Parsons, and the value of the slave Dick at the time he was recovered ; this value to be determined in the same manner as the value of the land.

3. The sum received from Farley in compromise.

4. The moneys received of the estate of Talliaferro, so far as Boyd has had the benefit of them, in virtue of his co-suretyship with Talliaferro on the said debt of Bell, must also be accounted for on the two demands ; that is, after allowing the credits above, the said sums received from Talliaferro's estate must be, so far as received by Boyd, applied *pro rata* to the balance of the debit, as the same may be found to represent the two original debts of $7,000 and $1,000.

The decree of the chancellor is reversed, and the cause remanded for further proceedings, in accordance with the principles of this opinion.

RICE, C. J., not sitting.