## THE PEOPLE *vs.* JOHN MOORE.

Where the testimony of a witness is impeached, his *examination,* taken by a magistrate on the institution of a prosecution for a criminal offence against another person, may be read in evidence to support his testimony; it may also be read to invalidate the testimony of the magistrate, in the account given by him of the facts testified to by the witness on such examination.

An *examination* of a *witness,* sworn to have been taken pursuant to the statute, will be *presumed* to have been read to or by the witness before it was signed by him, although the magistrate does not recollect that it was so read; the *examination* of a *prisoner* must be proved to have been read.

A party may impeach a witness, although he has *cross-examined* him, unless on such cross-examination he has attempted to establish a matter wholly disconnected with the *direct examination;* as to such matter he makes him *his own witness,* and cannot subsequently discredit him.

Where a witness, after leaving the stand, declares that what he has testified to was a sheer fabrication, such declaration may be given in evidence to impeach his credibility.

THIS was the trial of the prisoner on an indictment for *murder,* at the Onondaga oyer and terminer in September, 1835, before the Hon. Daniel Mosely, one of the circuit judges, presiding. After the public prosecutor had adduced proof in support of the indictment, a witness of the name of *Crofoot* was sworn on the part of the prisoner, who gave evidence material to the defence of the prisoner; to invalidate which the public prosecutor called the magistrate to whom complaint of the murder was made by Crofoot on the day it happened, who testified to a relation of facts given to him by Crofoot on that day, very different from that given by him in court. The magistrate, on his cross-examination, stated that four days after the complaint made by Crofoot, he took Crofoot's *exam-*

NEW-YORK, *ination* as a witness, which was taken pursuant to the statute,
May, 1836. though he stated that he did not recollect that the examina-
The People tion was read to the witness, and on that occasion Crofoot's
v. relation of the facts was substantially the same as when the
Moore. complaint was made. This evidence was objected to by the
public prosecutor, but received by the court. The counsel
for the prisoner then offered to read in evidence the *examina-
tion* of Crofoot, for the purpose of impeaching the testimony
of the magistrate given on his cross-examination ; to which
the public prosecutor objected; and the court ruled that the
examination should not be read in evidence, but that the
prisoner's counsel might use it for the further cross-examina-
tion of the magistrate. To this decision the prisoner's coun-
sel excepted. Another question under the law of evidence
arose on the trial. A woman of the name of *Mansfield* had
testified as a witness for the prosecution ; and another woman
of the name of *Cook* was sworn on the part of the prisoner to
impeach her testimony, who swore to declarations made by
the woman *Mansfield,* which did impeach her testimony. On
the cross-examination of the woman *Cook,* she refused to
answer, and was committed to jail for contempt of court.
After her commitment, she told a witness that the declara-
tions which she had testified to as made by the woman *Mans-
field,* were not made by her, but were made by the wife of the
prisoner. The public prosecutor offered to prove what had
thus transpired since the commitment of the witness. The
counsel for the prisoner objected to the testimony, but the
objection was overruled and the evidence received ; to which
decision the counsel for the prisoner also excepted. The pris-
oner was convicted, but his counsel having tendered a bill
of exceptions, judgment was suspended, and the case was
brought up for the advice of this court.

*B. Davis Noxon,* for the prisoner.

*J. J. Briggs,* (district attorney of Onondaga,) for the
people.

*By the Court*, SAVAGE, Ch. J. Two questions arise: 1. Should the examination of Crofoot have been received? 2. Was the testimony as to the declarations of the witness made in jail admissible?

It has recently been decided by this court, in conformity, as is supposed, with the weight of authority and correct practice, that when a witness is in any manner impeached, the party calling him may support his testimony by showing, that on other occasions he has given the same relation of facts to which he has sworn on the trial. 12 *Wendell*, 78. In this point of view the defendant was clearly entitled to produce the deposition taken before the magistrate on the examination of the prisoner. It was also proper for the purpose for which it was offered, to wit, to show that the justice was mistaken in the relation which he had just given of what Crofoot had sworn to. What reasons operated upon the minds of the court do not appear, as none are stated in the bill of exceptions. The objections now made by the district attorney to the introduction of the deposition taken on the examination, are, 1. That it does not appear, to have been correctly taken. On that point, the justice says that the examination was taken in pursuance of the statute, but whether it was read to the witness or not he did not recollect. When the justice swears that the deposition was taken in pursuance of the statute, the presumption is that it was regularly and properly taken; the law presumes every public officer does his duty until the contrary appears. The deposition must therefore be considered properly taken until some irregularity is shown. It is presumed that it was read over to the witness or by him, as it must have been signed by him according to the statute, 2 *R. S.* 709, § 19, but the statute does not in terms require that the deposition shall be read to the *witness*, as it does that the examination of a *prisoner* shall be read to him, 2 *R. S.* 708, § 16. There is a reason for this difference. The deposition of the witness must be upon oath and signed by him; the examination of the prisoner must not be on oath, and need not be signed by him, but by the magistrate. It is not to be presumed that any man will sign and swear to a deposition, without being properly informed of its contents. Such fact, therefore, if it

exists, should be shown on the other side to discredit the deposition.

2. It is said that if the deposition was correctly taken, it should have been produced, and the justice should not have been permitted to testify. That objection might have been taken on the trial, by the defendant's counsel. It was not, however, taken, and the justice was permitted to testify; but that circumstance did not preclude the defendant from discrediting the justice in any proper manner, and nothing could do it more effectually than to show by a deposition, drawn by himself and certified by him, that the witness' testimony was different from the statement of it given by him orally. It would show that the justice had either intentionally or unintentionally misrepresented the testimony of the witness. In either point of view the deposition would impeach the justice; in the one case it would impeach his integrity, in the other his memory. If there was a defect in either, the defendant was entitled to all the advantage he could derive from it.

3. It is argued that the *examination* was not admissible until after the attention of the justice had been called to the supposed discrepancies between his *parol* account of the testimony of Crofoot and the testimony as stated *in writing* in the examination; in answer to which, it will be observed that it was impossible in this instance to draw the attention of the justice to the supposed discrepancy, as the paper was not in evidence, nor in the possession of the defendant's counsel, who could not therefore know with certainty what it contained. 4. It is also urged, that no evidence could be introduced to discredit the justice, as the defendant had made him his own witness by the *cross-examination.* On this point we are referred to the case of *Jackson* v. *Thomas,* 2 *Caines,* 178. There the plaintiff produced a witness to prove his title by *descent.* On the cross-examination of the witness, it was shown that the ancestor had made a *will,* and parol evidence was permitted to be given of its contents without proper notice to produce it. The court said, upon a motion for a new trial, when the defendant cross-examined, he made the witness as much his own as if he had himself called him; but the court did not say that a party who cross-examines a witness makes such witness his own, so

that he cannot impeach him. In that case the defendant made the witness his own, not simply by the cross-examination, *but by the nature of that examination*, by which he introduced *a new defence* not growing out of the direct examination. He was examined to new matter. The plaintiff had examined the witness to prove his title by descent; the cross-examination, strictly speaking, related to the plaintiff's title by descent; but when the defendant examined the witness to show that a will had been made, he introduced a new topic, a new point of evidence, upon which the witness had not been examined by the plaintiff, and so far he made the witness his own. But how is that doctrine applicable here? The justice was introduced by the public prosecutor to discredit the testimony of Crofoot, by showing that he had given a different account of the affray, and in his direct examination he relates what Crofoot had said on the subject, and also that he had been examined before him. The examination of the justice, on the part of the defendant's counsel, was strictly a cross-examination and nothing more, and the fact appeared upon such cross-examination, that a written deposition had been taken by the justice. The defendant's counsel did not examine him upon any collateral matter, nor upon any subject not inquired into by the district attorney. The witness therefore did not become the witness of the defendant, and he was at liberty to impeach him in any lawful manner. In my opinion the court erred in rejecting the offer to produce the deposition taken before the justice. It was proper, both to support the testimony of Crofoot and to impeach Montgomery.

5. The testimony of the declarations of the witness after her commitment was properly admitted. The rule is, that what a witness has said at another time, on the same subject, may be shown to impeach him; and when impeached, similar testimony may be given to support him. It can make no difference at what time these declarations have been made, as to the competency of such testimony, though it may make much difference as to the effect of it. If a witness, the moment he leaves the stand, should declare that his whole testimony was a *fabrication*, and that was shown to the jury, they would place no confidence in the

NEW-YORK,
May, 1836.

The People
v.
Moore.

testimony which he had given ; but if the witness, after leaving the stand, should declare that he had sworn the truth, it would probably be of no use to prove such declarations, when similar declarations made at other times would aid much in supporting a witness who had been impeached upon the trial. On this point I think the court decided correctly ; but as they erred in rejecting the testimony offered, a new trial should be granted. It may have been very important. On that subject we cannot judge, as the testimony to support the indictment is not set forth, nor was it necessary that it should be. The jury are to judge of the effect of the testimony. It is enough for us to know that competent testimony has been withheld from the jury to authorize us in awarding a new trial,

New trial granted.