Hunt *v.* Fish.

---

Same Term. *Before the same Justices.*

Hunt *vs.* Fish and Taft.

Whether a notice of protest sent to an endorser who has changed his residence, is directed to the proper post office, or not, depends upon the fact whether it is directed to the office at which the endorser is accustomed to get his letters.
Accordingly, where a person had removed from one town into another, the post office in which was two and a half miles from his residence, while the post office in the town where he had formerly resided, and at which he had been in the habit of getting his letters, was within half a mile; *Held,* in the absence of any proof showing where he did in fact receive his letters, after his removal, that a notice directed to the post office where he had formerly received his letters was sufficient.
A party cannot be allowed to insist that his own witness is not to be believed. He has the right, if surprised by his testimony, to show by other witnesses, that the facts testified to are otherwise. But he cannot impeach him, directly or indirectly.

Hunt v. Fish.

Who is to be considered a *bona fide* holder of a promissory note, without notice, so as to exclude a defence which would be good against the original holder.

Where it appears from the whole case that justice has been done, an immaterial error of the court, or of referees, in the progress of the trial, will not entitle the party against whom such error was committed, to a new trial.

Motion by the defendants to set aside a report of referees and for a new trial. The action was assumpsit. The declaration contained the common counts; to which were subjoined copies of two promissory notes signed by Simons & Taft; the one for $1000, dated November 23d, 1842, payable three months after date, and endorsed by the defendants Jesse Fish and Vincent Taft, and by Jesse Matteson, Lewis Lawrence, and W. Hunt, the plaintiff; and the other for $500, dated March 21, 1843, payable three months after date, and endorsed by the defendants Jesse Fish and Vincent Taft, and by Lewis Lawrence. The plaintiff gave notice that these notes were the only cause of action on which he relied. The defendants pleaded the general issue, and gave notice of set-off, in the usual form. On the trial before the referees the plaintiff proved the signatures of the defendants upon the notes, and the endorsements of Matteson and Lawrence, the 3d and 4th endorsers of the first note, and of Lawrence the 3d endorser of the second note. He also proved by Geo. R. Thomas, that in 1843, Fish was reputed to live at Williamstown, Oswego county; and the witness thought that Vincent Taft, in that year, lived either in Lee or Annsville, Oneida county. A certificate of the protest of the $500 note was then produced, purporting to have been made by John Wood, notary public, in which it was stated that a notice of protest was given to Fish, by mailing a notice directed to him at Williamstown, Oswego county, and to Taft by a like notice directed to him at Lee, Oneida county, and another directed to Annsville; but the certificate did not state that either of said places was the reputed place of residence of those persons, respectively. A like certificate of protest of the $1000 note was produced, purporting to have been made by George P. Tyler, and stating that notice of protest was mailed for Taft, and directed to Lee, and for Fish to Williamstown. The sufficiency

Hunt *v.* Fish.

of these notices was objected to by the defendants' counsel, on the ground that the certificates did not state that the places to which the notices were sent were the reputed places of residence of the endorsers. But the objections were overruled, and the protests were read in evidence. Thomas Rockwell, a witness for the defendants, testified that during the years 1842 and 1843, he was cashier of the Ontario Branch Bank at Utica; that the $1000 note was discounted at the bank on the 25th of November, 1842, and that it went to the credit of Lewis Lawrence on the books of the bank. That it was the practice of the bank to place the proceeds of a discounted note to the credit of the person presenting it, unless otherwise directed. That this note was protested, and was paid to the bank after protest. That Mr. Hunt's name was on the note, as an endorser, when it was discounted; but witness could not tell who paid the note. Briggs W. Thomas, another witness for the defendants, testified that he was a clerk in the Oneida Bank in the year 1843, and had charge of notes left for collection at that bank. That the $500 note in question in this cause was left at the Oneida Bank for collection, by Lewis Lawrence, on the 30th of May, 1843. That it was placed to his credit on the books, and witness supposed from that circumstance, that he left it. That the note was sent to the Bank of Rome, where it was made payable, for collection, was protested, and sent back to the Oneida Bank, and taken from the bank after protest. That if Mr. Hunt had left the note at the bank, and directed the proceeds to be placed to the credit of Lawrence, the transaction, on the books, would not have appeared any differently from what it did. That persons often endorsed notes merely for the purpose of drawing the money on them, when they had no interest in them. That as it stood on the books, this note, if it had been paid, would have gone to the credit of Lawrence; and that no one but Lawrence, or some one having his order, could get the note from the bank; but that witness did not know to whom the note was in fact delivered. Richard Simons, a witness for the defendants, having been duly released, testified that he was one of the makers of the two notes, and one of the firm of Simons & Taft, who

executed a contract with Lewis Lawrence on the 10th of March, 1842, and an addition to the same on the 13th of October, 1842; which contract was read in evidence. By that contract Lawrence agreed to procure, for the use of Simons & Taft, from five to six thousand dollars, in advance if they should want it, in the following manner: Simons & Taft were to procure Jesse Matteson's endorsement on their note or notes, to the amount of $1500, which Lawrence was to procure the money on, and get them renewed from time to time from one to two years; and to make up the balance, Simons & Taft were to give their notes from time to time, payable to the order of Lawrence, which the latter was to negotiate, and raise the money on; or that Lawrence should give his note payable to the order of Simons & Taft, if they could get it discounted. That the two notes in question in this suit were delivered by Simons & Taft to Lewis Lawrence, upon that contract, and in fulfilment of that part of it which related to the raising of money by Lawrence upon notes furnished to him by Simons & Taft. That the contract was shown to the defendants before they endorsed the notes, and they endorsed the notes for the purpose of enabling Simons & Taft to fulfil that contract. The witness thought he saw the $1000 note at Lawrence's office, on the 21st of March, 1843, after it fell due, but was not positive. John L. Taft, one of the makers of the notes, was also examined as a witness for the defendants, after having been released, and testified that the notes were delivered to Lawrence upon the contract of Simons & Taft with him, and in fulfilment of the stipulations therein contained, on the part of Simons & Taft to furnish paper as mentioned in the contract. That he thought he saw the $1000 note in the hands of Lawrence after it fell due; that Vincent Taft lived at Annsville in February, 1843; that he lived a part of the time in Annsville and a part of the time in Lee; that he lived in Lee only one year, and witness thought it was in 1841; that his two houses in the two towns were not over 100 rods apart. That witness did not know whether Taft received his letters in Lee or in Annsville, or where he usually got them. That the Lee post office was

about half a mile from his house, and the Annsville post office was about two and a half miles distant.

In this stage of the proceedings the counsel for the defendants insisted that the testimony showed that the notes were given, and the money raised by Lawrence under the written contract given in evidence, and as an advance by him thereon to Simons & Taft; and that no action could, under any circumstances, be maintained by Lawrence against Simons & Taft; and that the notes having come to the plaintiff's hands after maturity, he took them liable to the same defences to which they were subject in Lawrence's hands. They therefore moved that the plaintiff be nonsuited, but the referees denied the motion. The defendants' counsel then offered testimony to show that under the contract of Simons & Taft with Lawrence, the latter had received more than lumber enough to pay all his advances and liabilities under the contract, including the notes in question, by over $3000. But the referees refused to receive the evidence. Lewis Lawrence being called as a witness for the defendants, testified that he had no knowledge of leaving the $500 note at the Oneida Bank, for collection, nor any recollection of receiving it from the bank after it was protested, and could not say who left it there. That he thought he did not receive the note on the contract; that as he understood it he received it in exchange for his note. That he exchanged with Simons, and he thought the $500 note was not given under the contract, because he had advanced Simons & Taft more than the contract required. That the note was delivered to him on the 23d of March, 1843; that it was not in his hands after it fell due; that he gave it to Mr. Hunt, the plaintiff, very shortly after he got it and before it fell due; that he gave it to Hunt for other means to enable the witness to raise money, but whether it was for his endorsement, or for money, he could not recollect; that at the time he gave Hunt the note witness owed him, as he thought, as much as $1000 for money lent; that he was at the same time his endorser; that he was a general endorser for him. That he thought he did not give him the note for money he had advanced, or for his endorsements, but for present means;

Hunt *v.* Fish.

that he could not remember whether it was or was not for pres-
ent means, but from the circumstances of the case it was his
impression that it was.   That if Hunt advanced him money,
on the note, it had never been repaid ; and that he still owed
him more than $500 for borrowed money, which he had had
at various times.   That when the $1000 note fell due, Mr.
Hunt gave the witness his check for $1000, and witness took it
and paid the amount to the bank, and carried the note back to
Hunt and gave it to him, and he had been the bona fide holder
and possessor ever since.   That Hunt did not lend witness the
money to take up the note, and witness gave him no security
for the amount, and had never repaid it.   That witness pro-
cured Hunt's endorsement on the note for the purpose of getting
it discounted ; and that Hunt endorsed it for his accommoda-
tion.   The evidence being closed, the defendants' counsel again
offered to show that under the contract with Simons & Taft,
Lawrence had received more than sufficient lumber to pay all
his advances and liabilities, by more than $3000.   And they
further offered to show the declarations of Lawrence, that these
notes were paid and cancelled, and the defendants discharged
from all liability thereon ; which evidence was offered, not to
contradict Lawrence, but on the ground that he was the real
party in the suit, and therefore that his declarations were evi-
dence.   But the referees excluded the testimony.   The defen-
dants' counsel further insisted that, as to the $1000 note, there
was no sufficient proof of protest and notice, to hold Vincent
Taft as endorser.   But the referees reported in favor of the
plaintiff, against the defendants, for the whole amount claimed,
being $1889.

*Ward Hunt,* plaintiff in proper person.

*C. P. Kirkland,* for the defendants.

*By the Court,* GRIDLEY, J.   We do not perceive any defect
in the proof of the notice of protest to the defendant Taft.   The
residence of Taft, after his removal, was only one hundred rods

distant from his former residence ; and notwithstanding it was situated in another town, it would not follow that the notice was erroneously sent. That would depend on the fact whether he was accustomed to get his letters at the office to which the notice was directed. (*Reid* v. *Payne*, 16 *John.* 218.) It appears from the evidence that after his removal, Taft lived at the distance of only half a mile from the post office in the town of Lee, while the post office in Annsville was situated at a distance of two miles and a half from his residence. There is no direct evidence to show where he did in fact receive his letters after his removal. But from the comparative distance of the two offices, and his custom while residing in Lee, it was a reasonable inference, for the referees to draw, that he continued to receive his letters at the post office at which he had been accustomed to get them, and where it was far more convenient for him than at Annsville. If this were not so, the fact was in the knowledge of the endorser, and he might have shown it. We think, therefore, that there is no reason to interfere with the finding of the referees on this point.

The main question in the cause was whether Mr. Hunt was a *bona fide* holder of the notes, so as to exclude the defence offered, and which would have been good against the original holder and owner. The possession of the notes by Hunt doubtless raised a presumption that he was a *bona fide* holder for value paid, and without notice of the facts set up as a defence. That presumption, however, was not in point of fact a strong one ; and was liable to be rebutted and overthrown by evidence of circumstances inconsistent with the fact of a bona fide holding. I am inclined to think that enough had been shown, when the defence was first offered to be proved, to repel the slight presumption arising from the mere possession of the papers, and that the referees erred in holding otherwise. This evidence was afterwards considerably strengthened by the testimony of Mr. Kirkland. Had the offer then been renewed, and if rejected, the defendants had rested upon this erroneous ruling of the referees, I am of the opinion that a new trial must of necessity have been granted.

Hunt *v.* Fish.

The defendants, however, adopted a different course. They called Lewis Lawrence, the payee of the notes, who testified that Mr. Hunt was a bona fide holder of them without notice. This witness was doubtless strongly in the interest of the plaintiff, and had he been called by the plaintiff, his testimony would have been subject to much just criticism. The defendants have, however, made him their own witness, and must take his testimony as he has given it. Had the defendants not called this witness, they might have argued that the referees should have disregarded his testimony, if it had been inconsistent or improbable. But they cannot now do this. He has sworn that Mr. Hunt was a *bona fide* holder, and the defendants cannot be heard to insist that he is not to be believed. They had the right, if surprised by his testimony, to show by other witnesses that the facts were otherwise ; but they could not impeach their own witness, either directly or indirectly.

When the defendants had given this additional testimony, they renewed their offer to go into evidence of their defence to the notes. But the aspect of the case was then materially altered for the worse. They had themselves proved Mr. Hunt to be a bona fide holder of the notes, as the referees held ; and assuming the testimony of Mr. Lawrence to be true, they decided the question right. At all events, that was a question of fact which belonged to them to decide. They had a right to assume that all the testimony against the bona fides of Mr. Hunt, as a holder of the notes, had been given ; and if they were satisfied on that point, in favor of the plaintiff, their finding can no more be disturbed by this court, than their decision upon any controverted question of fact in the final determination of the cause.

It is a familiar principle, that where upon the whole case, the court can see that justice has been done, an immaterial error of the court, in the progress of the trial, will not entitle the party against whom such error was committed, to a new trial. (3 *Barbour's Sup. Court Rep.* 545.) The same principle has been also held applicable to a case arising on the report of referees. The rule may be thus illustrated. A party has rested his cause on evidence of the defendant's hand-writing to a prom-

---

issory note, which the court, on a motion for a nonsuit, erroneously holds to be sufficient. The defendant excepts; and then calls a witness to disprove the hand-writing, who unexpectedly testifies to its genuineness, and thus makes out a case for the plaintiff which he had failed to do by his own testimony. Now if the defendant should move for a new trial, on a case, for the refusal of the judge to nonsuit the plaintiff, he would fail, upon the ground that upon the testimony which he had himself given, the plaintiff was entitled to recover. So it may be said here, that by the testimony of Lawrence, which the defendants elected to give, the decision of the referees was on the whole right.

Motion to set aside report, and for a new trial, denied.

