## MATTICE vs. ALLEN & HUGEL.

The plaintiff borrowed of the defendants' agent $40, which it was agreed should be applied towards the price of a quantity of barley belonging to the plaintiff, should the parties conclude a bargain for the sale and purchase of the barley. A few days afterwards a bargain was concluded, when it was agreed that the $40 should be applied on the contract. *Held* that this was a sufficient payment to take the case out of the statute of frauds; it being a payment at the *time of making the agreement,* within the principle of the decisions.

In an action upon a contract for the purchase of barley of the plaintiff, by the defendants, the former called R. as a witness, who testified to his agency for the defendants in the purchase of the barley, and the delivery of the grain to the defendants. The cross-examination of the witness was then suspended. After the plaintiff had rested, the witness was recalled, and was cross-examined by the defendants' counsel. At the close of his cross-examination, the witness was re-examined by the plaintiff's counsel, and was then further cross-examined by the defendants' counsel. The defendants, at the close of such examination, offered to contradict the witness, by showing that he had given a different version of the transaction, and also offered to impeach his general character. *Held* that the defendants had not, by their manner of examining the witness, so far made him their own as to be precluded from impeaching him.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover damages of the defendants for refusing to perform a contract entered into by them, through one Rosenkrans, their agent, for the purchase of a quantity of barley of the plaintiff. The contract, as proved by the plaintiff's own testimony, was as follows: " I called at Wallace's station and saw Rosenkrans, and told him I would like to get $40 to pay for some sheep I had bought; I had before then talked with Rosenkrans about selling him my barley, and when I asked him for the money I said to him, if I sell you my barley we will apply the money on the barley, and if I do not I will pay you the money back; he then gave me an order on his mother for the money; I took the order to his mother, who lived about half a mile from there, and got the money on it from her. The next Tuesday morning I returned to court at Bath, and on my way down I called at Wallace's station and saw Rosenkrans, and said to

him, ' I am now ready to contract my barley, what will you give me ?' He says, ' I'll give you ninety cents, and if you say I shall have it at that, we will call it contracted and apply the $40 on the contract;' the $40 was applied so; I said I will do it and call it a contract; he said they were full at the storehouse, and they had no bags ready, and wanted me to hold on from delivering it, and said that some day when I was down there he would let me know when they wanted me to deliver it." A breach of the agreement was proved, and the amount of damages sustained by the plaintiff. The referee reported in favor of the plaintiff, for $180; for which sum, with costs, judgment was entered. The other material facts appear in the opinion of the court.

*D. Rumsey,* for the appellant.

*S. H. Hammond,* for the respondent.

*By the Court,* E. DARWIN SMITH, J. The first question presented for our consideration upon this appeal arises upon the exception to the decision of the referee refusing to nonsuit the plaintiff. This exception I think not well taken, and that the motion for a nonsuit was properly denied. The plaintiff had proved the contract of sale, and that before consummating the trade he had borrowed of the defendants' agent $40, which it was then agreed between them should be applied upon the sale of the barley if they concluded a bargain therefor; that a few days afterwards they concluded such bargain, when it was agreed that the $40 should be applied on the contract. This, I think, was a sufficient payment to take the case out of the statute. The plaintiff had $40 in hand of borrowed money payable on demand, which was expressly received as a contingent advance upon the barley, and was subsequently applied as part payment therefor, upon the consummation of the contract of sale. It was a payment at the *time,* within the principle of the cases of *Brabin* v. *Hyde,*

Mattice *v.* Allen.

(30 *Barb.* 267;) *Artcher* v. *Zeh*, (5 *Hill*, 200;) *Ely* v. *Ormsby*, (12 *Barb.* 570;) 2 *Sand. S. C. Rep.* 157. The agent, Rosenkrans, could not, after this application of the money, have recovered it of the plaintiff. It was received as payment on the contract, and must be deemed in fact as a conclusive and definite payment thereon, for all purposes.

The next and more important exception relates to the refusal of the referee to allow the defendant to contradict and impeach the witness Rosenkrans. This witness was called by the plaintiff, and gave evidence proving his agency for the defendants for the purchase of the barley in question, and his appointment as such agent by the witness Boyd, and that such barley was sent to the defendants. The cross-examination of this witness was then suspended, for the present. After the plaintiff had rested, the witness was recalled, and was then cross-examined by the defendants' counsel. After such examination by the defendants' counsel was finished, "the witness was then re-examined by the plaintiff's counsel," and after such testimony was given he was further cross-examined by the defendants' counsel. After his testimony was completed, the defendant offered to contradict the witness by showing that he had given a different version of the transaction, and also offered to impeach his general character. This was objected to and disallowed by the referee, on the ground that the defendants, "by the manner in which they had examined the witness had made him their own witness." It is a fundamental rule in the law of evidence that a party shall not impeach his own witness. (*Greenl. Ev.* § 442. 3 *Phil. Ev.*, *Edwards'* ed. 981, and note of *Cowen & Hill*, 601.) So far as relates to the party originally calling a witness, this rule is plain, and universally applied. A party calling a witness is presumed to know his general character, and cannot be allowed to experiment in calling a witness whom he knows to be unworthy of credit, with liberty to regard him as a good witness if he testifies in his favor, and destroy his credit if he testifies against him. But it was

Mattice *v.* Allen.

claimed by the defendant, and was in effect so held by the referee, that a party may make a witness called by his adversary his *own witness* so as not to be at liberty to ask him leading questions or impeach his general character, and that he will so do when he calls a witness who has already been called and sworn and given testimony for the opposite party, to prove his own case.  Every witness, called and sworn on the trial of a cause, who gives material testimony in favor of the party calling him, is subject to a cross-examination by the opposite party.  But in view of the rule suggested and held at the trial of this cause, it would obviously be very important and essential that such cross-examination should not exceed the limits of a legitimate cross-examination.  The supreme court of the United States hold the rule as claimed by the plaintiff.  Judge Story, in the case of the *Philadelphia and Trenton R. R. Co.* v. *Simpson*, (14 *Peters*, 461,) states the rule as follows : "A party has no right to cross-examine any witness except to facts and circumstances connected with the matters stated in his direct examination.  If he wishes to examine him to other matters, he must do so by making the witness *his own*, and calling him as such in the subsequent progress of the cause."  And the supreme court of Pennsylvania also so hold the rule in *Ellmaker* v. *Buckley*, (16 *Serg. & Rawle*, 76,) and in *Floyd* v. *Brown*, (6 *Watts & Serg.* 76.)  The English rule is otherwise.  Starkie states the rule as follows : "When a witness has been examined by one party, he may afterwards be cross-examined as an adverse witness when he is called by the adversary as one of his own witnesses."  (*Starkie's Ev.* 132. *Greenl.* § 447.  2 *Phil. Ev., Edwards'* ed. 906.)  And such, I think, is the rule in this state.  (*Jackson ex dem. Eden* v. *Varick*, 7 *Cowen*, 238 ; *S. C.*, 2 *Wend.* 166.  *Fulton Bank* v. *Stafford*, 2 *Wend.* 483.)  And such is the rule in Massachusetts.  (*Webster* v. *Lee*, 5 *Mass. R.* 334.  *Merrill* v. *Inh. of Berkshire*, 11 *Pick.* 269.  *Moody* v. *Rowell*, 17 *id.* 499.)  But though a witness once sworn may be re-examined by the

Mattice *v*. Allen.

adverse party, as upon cross-examination, in any stage of the trial of a cause, the question remains, whether, when a party calls his adversary's witness to prove his own cause, he so far makes him his own witness that he cannot impeach him. In *Jackson ex dem. Van Slyck* v. *Son*, (2 *Caines*, 178,) the plaintiff claimed by descent, and called a witness who, on cross-examination, proved by parol a will made. The court held that the proof given was improper, and said the defendant made the witness his own, as much as if he had called him. But Judge Savage, speaking of this case, in *The People* v. *Moore*, (15 *Wend*. 422,) says : The court did not say that a party who cross-examines a witness makes such witness his own, so that he cannot *impeach* him. (*See also Janney* v. *Manel*, 2 *Hayw*. 397.) This right of cross-examination of an adversary's witness is however, I think, subject to this qualification—that the subject is within the discretion of the judge at nisi prius, in respect to putting to him leading questions. The rule on this question is well stated by Chief Justice Shaw in *Moody* v. *Rowell*, (*supra*;) 2 *Phil. Ev.* 906; *Note of Cowen & Hill*, 582, and 21 *Verm. R.* 438. There is connected with this right of cross-examination another important qualification. The right of cross-examination does not extend so far as to allow a party to go into his own case prematurely. Judge Story, in the case in 14 *Peters*, *supra*, doubtless states correctly the rule in respect to what cross-examination strictly consists in, and to which it should be limited in the first instance. A party has no right, I think, before he has opened his case to the jury, to introduce it and prove it on cross-examination of his adversary's witness. (*Greenl. Ev.* § 447. *Ellmaker* v. *Buckley*, 16 *Serg. & R.* 76.)

I think the referee erred, therefore, in holding that the defendant lost the right of impeaching the witness Rosekrans by the manner of his examination. He was the witness of his adversary; and if he had given material testimony against him, although he had attempted to prove his own case or some part of it by him, still he did not thereby forfeit the

right to impeach him by particular or general testimony. But if the rule in regard to cross-examination were as strict as held by the United States court and the courts in Pennsylvania, still I think the defendant had the right to impeach this witness. The suspension of the cross-examination, when he was first called, was not objected to or objectionable, that I can see. When the witness was recalled and cross-examined, the examination, I think, upon a fair interpretation, did not exceed the limits of a strict cross-examination as defined by Judge Story in the case in *Peters, supra.* After such cross-examination, it appears that the plaintiff re-examined the witness upon the merits, and he then gave most important and material testimony for the plaintiff. It would be entirely wrong after such testimony had been given — and out of order too — to preclude the defendant from impeaching the witness. The referee, I think, clearly erred upon this point, and that there should be a new trial.

[Monroe General Term, December 3, 1860. *Smith, Johnson* and *Knox,* Justices.]