# IN GENERAL TERM, 1873.

SOPHIA KIRTZ *v.* ROBERT SPAUGH ET AL., Appellants.

PRACTICE—

SURETY—

WITNESS—

Sustaining a demurrer to a paragraph of answer is not available as error, if the same facts are set up in another paragraph, upon which issue is joined and the cause tried.

A plaintiff is not compelled by the provisions of Section 41 of the code, to take a several judgement against one of the defendants before the rights of all are tried.

In a suit upon a joint and several promise, while a defendant, who claims to be a surety of the other defendant, is resisting a recovery by setting up

defenses going to the merits of the whole case, he cannot complain because the proceeding is not more diligently prosecuted against his co-defendant.

Where a witness is called to prove facts supposed to be favorable to the party calling him, and the witness having testified that they did not exist, the party calling him cannot then introduce testimony to show that the witness had previously made statements tending to show that the facts did exist. The party calling such witness is not precluded from calling other witnesses to prove that such facts do exist.

*E. T. Johnson,* for appellants.

*Mitchel & Ketcham,* for appellee.

BLAIR, J.—This is a suit by Sophia Kirtz against Robert Spaugh, and Charles S. Boynton, on a promissory note, made by the defendants to the plaintiff, dated January 12, 1870, dne one day after date.

The defendant Spaugh suffered a default. Defendant Boynton filed an answer in eight paragraphs.

The first was a general denial. The second, payment by his co-defendant, Spaugh. Third, that he (Boynton) executed the note without any consideration. Fourth, that the consideration of the note moved entirely to his co-defendant, Spaugh, and he signed it only as surety for Spaugh, as was well known to the plaintiff, and that afterwards, on the first day of January, 1871, the defendant Spaugh paid the plaintiff $31, being the interest in full to that date, and the plaintiff then agreed to, and with the defendant Spaugh, without the knowledge, or consent of the defendant Boynton, in consideration of Spaugh agreeing to pay the plaintiff ten per cent. interest on the note for the next six months, and pay the principal at the end of that period, that he would extend the time of payment for six months, to wit: until the first day of July, 1871. The fifth sets up a similiar extension of time from the first day of July, 1871. The sixth sets up a verbal notice to the plaintiff to proceed to collect the note

Kirtz *v.* Spaugh *et al.*

and a parol promise of the plaintiff to release the defendant Boynton in consideration that Spaugh had agreed to pay large interest on the note, and that the plaintiff had agreed to, and had extended the time of payment of said note, and also in consideration that Boynton would not compel the plaintiff to sue Spaugh.

To this last paragraph a demurrer was sustained by the Court, and the proper exception entered by the defendant

In the first place the notice to sue being only verbal, did not place the plaintiff under any obligation to institute suit on the note, (2 G. & H. p. 306. See 672) and hence the defendant Boynton yielded no right he had acquired to have suit brought, nor the plaintiff any obligation she was under to bring suit against Spaugh, and therefore this did not make any consideration for the release claimed. The other allegations being merely general in their terms, that Spaugh had agreed to pay "large interest" on the note, and that the plaintiff had extended the time of payment of the note, without setting up any valid agreement by which the time had been extended, furnish no consideration to support the plea, and the action of the Court in sustaining the demurrer was therefore right.

A seventh paragraph of answer alleges a notice in writing, after the maturity of the note, requiring the plaintiff to institute a suit on the note, and avers that the plaintiff neglected for an unreasonable time to institute any suit, &c.

No question is raised in connection with the eighth paragraph of answer.

Issues were then joined upon the different paragraphs of answer, after which, on the 18th of March, 1872, a supplemental answer was filed by the defendant, alleging notice in writing, given the plaintiff in December, 1871, to forthwith institute an action against Spaugh, and charging that if the plaintiff had diligently pursued her remedy the debt could

have been made off Spaugh, but that the plaintiff neglected. to bring such suit until the 13th day of January, 1872, when suit was instituted, and the defendants Spaugh and Boynton each served with process more than ten days before the first day of the February term of this Court, and on the second day of said term of Court, the defendant Spaugh was called, and defaulted, since which time to the 13th day of March, 1872, no further proceedings have been taken against said Spaugh, wherefore the defendant claims he is discharged, &c.

A motion of the plaintiff to strike out that part of the supplemental answer that alleged the taking of the default against the defendant Spaugh, and a failure of the plaintiff to proceed against him, was sustained by the Court. A demurrer was then sustained to the remaining portion of the answer.

These rulings are assigned as errors. There was no error of which the defendant can complain in sustaining the demurrer, after the motion to strike out had been sustained, for the answer was then the same as the seventh paragraph upon which issue had already been joined, and upon which the question arising upon the notice to sue was tried.

Was there any error in striking out that part of the answer that alleged a failure to proceed to judgment against Spaugh after he had made default?

We think not. On the same day that Spaugh was defaulted, the defendant Boynton appeared, and was ruled to answer. On the next day he filed an answer in eight paragraphs presenting defenses in almost every conceivable shape, one a general denial, which was not withdrawn until after the filing of the supplemental answer, and another that the note had been fully paid by Spaugh.

The argument of the defendant proceeds upon the theory that the note being joint and several, the plaintiff was com-

pelled, by virtue of the notice, immediately upon the default of Spaugh, to proceed to judgment against him. The third clause of section forty-one, 2 G.& H. page 66, urged upon our attention by the defendant as supporting his position, reads as follows: " If all the defendants have been served, judgment may be taken against any, or either of them severally when the plaintiff would be entitled to judgment against such defendant or defendants, if the action had been against them, or any of them alone."

The entire context of the section of which the above is a part, shows that its provisions are for the benefit of plaintiffs, and gives them privileges which they may or may not avail themselves of, and we do not think that even in a case where the rights of other parties may be affected, a plaintiff can be compelled to proceed to take a several judgment against one of the defendants before the rights of all are tried. If the note had been paid by Spaugh as solemnly alleged by Boynton in his answer, good faith to all the parties would seem to indicate that the issue should be tried before proceeding to judgment against Spaugh, for although, under the laws, the default of Spaugh admitted the indebtedness against him, yet if it should turn out in proof that the debt had been paid by him, judgment ought not to be given against him. The plaintiff was not compelled to proceed to present her proof, and case until the whole of it could be presented at once, and while the defendant was resisting a recovery by the plaintiff by setting up and urging defenses going to the merits of the whole case, it does not lie in him to complain because the same proceeding was not more diligently prosecuted against his co-defendant.

The overruling of a motion for a new trial is also assigned for error.

A great many reasons are set out in the motion, but as the greater portion of them are without force, we will only

notice those embraced in the assignment of errors, and discussed in the brief of counsel.

The bill of exceptions contains some ten or twelve pages of matter, setting out an offer to prove statements made on a former trial of the cause by the plaintiff, when testifying as a witness.

The first offer was made before the plaintiff was present at the trial, but afterwards, her presence having been procured, the Court, at the request of the defendant, having given time to bring her in, she was examined as a witness for the defendant Boynton.

The bill of exceptions does not state clearly by whom the plaintiff was introduced as a witness on the former trial.   If introduced by the defendant Boynton then it was clearly incompetent for him to prove on the last trial what she, as his own witness, had testified to on the former trial.   In the absence of any showing to the contrary, we must presume in favor of the ruling of the Court, that the plaintiff was introduced and testified as a witness for the defendant on the former trial.   On the trial the plaintiff says, as her evidence in the bill of exceptions shows, that she was examined as a witness for defendant Boynton on the former trial.

After the plaintiff was introduced by, and examimed as a witness for the defendant, the offer was again renewed and a series of questions propounded to the plaintiff.   These were for the purpose of discrediting her testimony by showing that at the former trial the witness had made other, and different statements.

The plaintiff seems to have been called as a witness by the defendant to prove that an agreement had been made between the plaintiff, and the defendant Spaugh to extend the time of payment of the note in suit.

Whether we regard the proof offered as tending to contradict, or impeach the witness, or as admissions made by

the plaintiff, we think the ruling of the Court was right. The introduction of admissions in testimony must be without violating any rules of evidence which apply when a party is constituted a witness. *Carter* v. *Buckner,* 3 *Blackf.* 314 ; *Carter* v. *Edwards,* 16 *Ind.·* 238.

It is urged on behalf of the defendant that a party may in the language of the statute, always contradict his own witness, " by showing that he has made statements different from his present testimony."

The witness having been called to prove certain facts supposed to be favorable to the party calling her, and the witness having testified that they did not exist; it has been held under a statute almost identical with ours, that the case does not fall within the reason or policy of the rule which will allow the witness to be contradicted by evidence, that she had previously made statements agreeing with the proof desired to be made by the party calling her. *Camp* v. *The Commonwealth,* 2 *Met. (Ken.),* .17 ; *Mc Vey* v. *Blair,* 7 *Ind.* 590.

The party calling such witness is not precluded from calling other witnesses to prove that such facts do exist. 1 *Greenleaf on Evidence,* (12 *Ed.*) *p.* 491, §444 *a, and authorities there cited.*

The whole case seems to show an attempt on the part of the defendant to make out his entire defense by proof of testimony introduced by himself on a former trial.

We have examined the evidence, and think it fully supports the finding and judgment, and cannot believe that the evidence offered could in any event have changed the result, even if it had been admitted.

The judgment is affirmed.

Note.—A surety will not be discharged by mere forbearance — *Goring* v. *Edwards,* 6 *Bing.* 94; 5 *Bing. N. P.* 728,—unless there be some stipulation in

the guaranty binding the party guaranteed to use due diligence against the principal—*Hall* v. *Hadley*, 2 *Adolphus & Ellis's Reports, K. B.* 758—nor by acceptance of a collateral security—3 *Barnwell & Cresswell's Reports, K. B.* 208—nor if he himself have agreed to the indulgence given the principal—1 *Turner*, 395; 7 *B. & C.* 735,—or have subsequently assented to it. 4 *M. & W.* 454. See also, *Smith's Mercantile Law*, 353.

" One of two joint makers of a promissory note, though he may have signed for the others accommodation, cannot, it seems, consistently with the principles above (i. e. S. M. L. 302) laid down, be so looked upon as his surety that giving time to the other may discharge him." *Same, and authorities cited thereto.*

The contract of a surety cannot be varied, *without his consent*, otherwise he will be discharged. 2 *Pick.* 235, 236; 9 *Wheaton*, 720; 8 *Wendell*, 512; 1 *Dana*, 82; *Moss* v. *Hall*, 5 *Exch.* 46, 49, *Per Parke B.* See also, *Chitty on Contracts, p.* 542, *et seq, and cases cited.* Also, 2 *Penn.*, 27; 10 *John*, 587; 6 *Hill*, 540; 5 *do.*, 534; 2 *Denio*, 375; 17 *Wend.* 422, *and note g.* 547; *Chitty on Contracts.* See *Bayley on Bills, 5th Ed.* 338, for the various cases on this subject.

Forbearance by the creditor without any binding agreement to refrain from proceedings cannot exonerate the surety at law, or in equity. *See note* 2, *Chitty on Contracts, p.* 545.

When the surety may be discharged, and to what extent, *see authorities cited as above. Contra* to last citation. 7 *Paige*, 452; 7 *Hill*, 250; 3 *Stewart* 14; 10 *John*, 587; 13 *Wendell*, 377. See also, 5 *Cushing*, 50, as to the line between guarantee and surety.

---

Although a party calling a witness shall not be allowed to impeach his general character, yet he may show that he has told a different story at another time. 12 *Serg. & Rawle*, 281.

Where a witness gives evidence against the party calling him, * * he may be asked by the party calling him, at the discretion of the Court, whether he has not, on a former occasion, given different testimony as to a particular fact. 6 *Watt & Serg.*, 285.

A party may prove the fact to be different from what one of his own witnesses has stated it to be———. This is not discrediting his witness. 1 *Iredell, N. C. Reports*, 236.

The rule that a party cannot discredit his own witness by proving that he had made contradictory statements at other times, does not apply to those cases, where the party is under the necessity of calling witness to an instrument. 17 *Maine*, 19.

A party calling a witness, if surprised by his testimony, has the right to show by other witnesses that the facts testified to are otherwise. 4 *Barb.*, 324; 16 *Geo.*, 593; 10 *Cush.*, 59; 13 *Gray*, 294; 2 *Metcalf*, 17. See also,

*Robb* v. *Hackley*, 23 *Wend.*, 50. See additional notes in *Roscoe's Crim. Ev.*, p. 95, *et seq.*

"Where the credit of a witness is attacked by proving former statements contradictory to his statements in Court, it is competent in his support to show statements made at other times and places consistent therewith."— *Dorsey* v. *Miller*, 3 *Sneed*, 72—but *contra*, 17 *Barb.*, 489, and other authorities cited in *Roscoe's Crim. Ev.*, p. 96, *notes.*

Where a witness has given evidence against the side on which he has been called, and the Court has reason for believing that the witness has testified under a mistake of the facts, or unintentionally falsely, and there is no bad faith on the part of the party producing him, he is allowed to give evidence explaining or contradicting his own witness. *The People* v. *Sheeham*, 49 *Barb.*

"It is well settled that a party may prove the facts in issue to be different from a statement of them made by witnesses he has called; but as a general rule, a party is estopped from introducing testimony merely to discredit his own witness, even though the witness had been examined by the other party upon new matter." This general rule is not inflexible. *Stuckely Thornton's executors* v. *Stukely Thornton's heirs, Supreme Court of Vermont*; *cited in* 6 *Am. L. Reg.*, (N. S.) 341.

When witnesses are called to impeach a principle witness by stating that such witness has, out of Court, made statements in conflict with the testimony on the stand, such witness may be re-called, and asked the direct question, whether or not he made the statement thus imputed to him, though the question may be leading in form. *Glines* v. *Smith*, 48, *N. H.*

In 7 *Ind.*, 590, *McVey* v. *Blair*, the witness was asked by the plaintiff calling him, if he did not tell S. the cause of his delay at a certain time and place. The witness answered, "I do not remember." S. was then called by plaintiff, and testified that the witness did so tell him.

*Held*, that what witness told S. was clearly inadmissible, because it was hearsay in the strictest sense of the term, and on that account should have been excluded.

As a general rule, "whatever facts the witness may speak to, he should be confined to those lying in his own knowledge, whether they be things said or done, and should not testify from information given by others, however worthy of credit they may be."

It is true the credit of a witness may be impeached by proof, that he has made statements out of Court contrary to what he has testified on the trial, but this applied to S's testimony would allow the plaintiff to impeach his own witness.

In the case of *Lanchez* v. *The People*, 22 N. Y. Reports, 155, (Court of Appeals) *Clerke*, Judge, dissenting as to some of the points decided in the opinion of the Court. *Held*, that "a party is not precluded from proving

the truth of any particular fact by any other competent testimony in direct contradiction to what his own witness might have testified, but whether he can prove that the witness had previously stated the facts in different manner is, according to Greenleaf, (1 Sec. 444) a question upon which there exists some diversity of opinion.".

"What a witness hath been heard to say, at any time, may be given in evidence, in order either to invalidate or confirm the testimony which he gives in Court."—*Hawkins 2, Ch. 46, Sec. 14*—but this has not always been allowed to a party in relation to his own witness. See 1 *Greenleaf on Ev., Sec. 442, et seq, and notes thereto.* Also, in the case of *Commonwealth v. Welch, 4 Gray, 535, 537 ; Holbrook v. Mix, 1 Ed., Smith, 154 ; Alexander v. Gibson, 2 Camp., 555 ; Lawrence v. Barker, 5 Wend., 305 ; Bradley v. Recardo, 8 Bing., 57 ; Jackson v. Leek, 12 Wend., 105 ; Spencer v. White, 1 Iredell, R. 239 ; Hall v. Haughton, 37 Maine, 411 ; Leavy v. Dearborn, 19 N. H., 351.*

In a recent English case, it was held, that if a witness unexpectedly gives evidence adverse to the party calling him, the party may ask him if he has not, on a particular occasion, made a contrary statement, and the question and answer may go to the jury with the rest of the evidence; the Judge cautioning them not to infer from the question alone that the fact suggested in it is true. See *Melhuish v. Collier, 15 Ad. & El.*, 378; N. S.—[REPORTER.