SIMEON MATHER, AS EXECUTOR, ETC., OF ELIJAH PARSONS, DECEASED, AND RHODA PARSONS, RESPONDENTS, v. GILBERT E. PARSONS, APPELLANT.

*Judgment — when set aside as having been procured through fraud — Evidence — when the general character of a party testifying in his own behalf may be impeached — when parties are not bound to accept all the statements contained in affidavits of their adversary although put in evidence by them — a witness cannot give his "undersanding" of a conversation — when the denial of a motion does not bar an action for similar relief.*

This action was brought to set aside a judgment recovered by the defendant against his father Elijah Parsons, the plaintiff's testator, on the ground that the same was procured by the fraud of the defendant. In June, 1870, just after Elijah had seated himself in a car to return from the city of Oswego to Syracuse, the summons in an action in the Supreme Court was handed to him by one Curtiss, to whom it had been given for service by the defendant. As soon as the summons had been delivered, and before Elijah had read it or become aware of its contents, the defendant, who was an attorney-at-law, took it, saying that he would attend to it. No other service of the summons was made, nor did the said Elijah ever know that any action had been commenced against him by the defendant. Subsequently the defendant entered a judgment in his own favor against his father secretly and with the intent that the fact of its entry should not be known to the said Elijah, or to any of his family or friends, during his lifetime.

*Held*, that the court had jurisdiction of the action and that the judgment should be set aside upon the ground that it had been procured by the wrongful and fraudulent acts of the defendant.

Upon the trial the defendant testified in his own behalf as to some of the principal matters in controversy and was cross-examined by the plaintiffs. Subsequently the plaintiffs were allowed to call witnesses to impeach the defendant's general character.

*Held*, no error.

In December, 1878, a motion, made by the plaintiffs at a Special Term for leave to serve an answer in the action in which the judgment was entered and defend the same, was denied.

*Held*, that as this motion was addressed to the discretion of the court, and as its denial appeared to have been rested in part upon technical objections, its deci_ sion did not prevent the plaintiffs from maintaining this action, especially as the jurisdiction of the court to enter the judgment was questioned, and as nothing occurred on the motion to confer such jurisdiction or prevent its existence from being inquired into.

Upon the trial the plaintiffs put in evidence the affidavits used by the defendant in opposing the said motion.

*Held*, that the affidavits were not thereby made conclusive upon the plaintiffs, and that they might show the facts to be contrary to some of the statements therein contained.

In the course of the trial the defendant and Webb, his attorney, had been examined as witnesses. Subsequently one Fitzgerald was called by the plaintiffs and examined as to a certain correspondence, and as to negotiations and conversations had by him with the defendant and Webb, in respect to his giving evidence upon the trial as to the service of the summons upon Elijah. He was then asked, and against the defendant's objection and exception allowed to answer, the following question, viz.: "When you sent the telegram to me did you understand from the interviews that you had with Webb in New York and your correspondence with him that he wanted to procure you to swear false for money?"

*Held*, that it was error to allow the witness to state his understanding of the correspondence and conversations.

APPEAL from a judgment in favor of the plaintiffs, entered in Jefferson county upon the report of a referee.

The action was brought to set aside a judgment entered in Oswego county October 25, 1875, in favor of Gilbert E. Parsons against his father Elijah Parsons, now deceased, for $2,060 damages and $16.69 costs. The judgment was entered October 25, 1875. The plaintiffs, the executor and widow of Elijah, set out in their complaint the circumstances attending the recovery of the judgment somewhat in detail, and allege that the " said judgment is wholly without consideration, and that the same was recovered and entered by the fraud of said defendant, and that said judgment is fraudulent and void." Elijah Parsons died August 14, 1878, being nearly seventy-

nine years old. The referee in his findings of fact, says " that on or about the 23d of June, 1870, said Elijah Parsons was at the city of Oswego and about to take the train to return home ; after seating himself in the car one Samuel Curtiss, of Oswego, handed him a summons in the Supreme Court, which summons had just previously been given said Curtiss to serve on said Elijah Parsons by the defendant. As soon as said summons had been delivered to said Elijah Parsons, and before he had read it or become aware of its nature or contents, defendant took it, saying he would attend to the matter, and the train then starting, defendant and Curtiss left the cars and Elijah Parsons returned home. \* \* \* That the summons in said judgment roll was never served on said Elijah Parsons ; that no copy of the summons in said judgment roll was ever delivered to and left with said Elijah Parsons ; that said Elijah Parsons never was informed of, knew or understood that the defendant commenced any action against him June 23, 1870 ; that he never knew of the proceedings of such suit or the entry of judgment, and was not informed in regard thereto by the defendant or otherwise. \* \* \* That the said judgment was obtained and entered as aforesaid secretly and with intent on the part of the defendant, that the same should not be known by or communicated to said Elijah Parsons, or his wife, or any of his immediate neighbors or friends during his life. It was the intention of the defendant at the time of the entry of said judgment to keep the existence of the same, as far as he could, secret during the life of his father, and not to enforce the same until after his father's death." As a conclusion of law the referee found, viz.: (1.) That no process was legally served on said Elijah Parsons. (2.) That said judgment is fraudulent. (3.) That the plaintiffs are entitled to judgment, declaring said judgment fraudulent and void, with costs, and ordered judgment accordingly.

*Levi H. Brown*, for the appellant.

*Dennis O'Brien*, for the respondents.

HARDIN, J.:

Courts of equity have power and jurisdiction to set aside judgments procured by fraud. Precedents in the exercise of such power and jurisdiction are numerous. The principle upon which the

courts proceed is that fraud vitiates judgments and proceedings to obtain judgments. (*Stilwell* v. *Carpenter*, 59 N. Y., 423 ; *Smith* v. *Nelson*, 62 id., 288 ; *Dobson* v. *Pearce*, 12 N. Y., 156.)

Judge ANDREWS, speaking for the Court of Appeals in *Stilwell* v. *Carpenter* (*supra*), uses language appropriate and suitable for that case, and useful to have in mind in considering the case in hand ; the judge says : " It is not sufficient to authorize the interference of the court that it is shown that the claim upon which the judgment was obtained was unfounded or that there was a good defense to the action, or that the court erroneously decided the law, or that the defendant *omitted* to avail himself of his defense, if before the judgment was rendered the facts were known, or might by the exercise of reasonable diligence have been ascertained by him. It is the duty of a defendant to make his defense, if he has any, when he is sued, and if he omits to do it, he is in general concluded by the judgment."

*Dobson* v. *Pearce* (*supra*), Judge ALLEN says : " The jurisdiction of the court in which a judgment has been recovered is, however, always open to inquiry ; and if it has exceeded its jurisdiction, *or has not acquired jurisdiction* of the parties by the *due service of process*, or by a voluntary appearance, the proceedings are *coram non judice*, and the judgment void."

The complaint alleged " that no summons was ever left with said Elijah Parsons in said action in which said judgment was entered, and that said Elijah Parsons never knew that any suit had been commenced against him by the defendant, or that the defendant had recovered any judgment against him," and that "the same was recovered and entered by the fraud of said defendant, and that said judgment is fraudulent and void."

We are of the opinion that the complaint authorized the referee to receive evidence tending to support the facts found by him in his report. And that the complaint, though not so definite and elaborate as it might have been required to be made, had the defendant seasonably moved to have it made more specific, was sufficient to warrant the trial court in inquiring whether the summons was ever served upon Elijah Parsons, or whether the court ever acquired jurisdiction to render judgment against him by reason of what took place on the 23d of June, 1870. (*Thomas* v. *Beebe*, 25 N. Y., 247.)

If the defendant fraudulently obtained an affidavit from Curtis to the effect that the summons had been duly served by a delivery thereof, or by the delivery of a copy to Elijah Parsons, with an averment in the affidavit that the summons, or a copy thereof, was left with Elijah Parsons, when in fact it was not, and the defendant here knew that fact, and notwithstanding, used the affidavit of Curtis in the entry of judgment, then he was guilty of a fraud, and "recovered and entered" by fraud the judgment, and the same is "fraudulent and void." Whether the defendant was guilty of fraud, as found by the referee, was made the principal question for litigation before the referee. Although much evidence, *pro* and *con*, was taken upon the question whether the affidavit of service filed with the judgment-roll had been altered after the officer taking the affidavit had signed the same. But as the referee rests his decision upon his findings in respect to the first question, that is the one chiefly entitled to our consideration in the examination of this appeal. The learned counsel of the defendant contends that the burden was upon the plaintiffs, in respect to the several grounds upon which they were entitled to impeach the judgment. In this respect we think he is right. Plaintiffs allege the judgment is invalid, that it was fraudulently obtained; of course in the first instance, the burden is upon the plaintiffs to substantiate their allegations of fraud. (*Heineman* v. *Heard*, 62 N. Y., 448; *Miller* v. *Brenham*, 68 id., 83; *Harris* v. *White*, 81 id., 532; *Smith* v. *Nelson*, 62 id., 286; *Ferguson* v. *Crawford*, 86 id., 609.) Of course the fraud must be actual and positive. (*Ross* v. *Wood*, 70 N. Y., 8, 10.) But what fraud could be more actual and positive than the one which the findings of fact disclose in this case. Before a party is cast in judgment he ought to know that he has been sued, and ought to know that he is called upon to defend. If a party causes a summons to be served and then himself immediately takes it back with the assurance that it is a paper for him and not for the defendant, and then allows the defendant to believe such to be the fact, and subsequently enters a judgment, a palpable fraud is accomplished; a fraud which no attorney ought to be allowed to profit by when perpetrated upon any party, whether the fraud be practised upon his father, his former client, or any other person.

It is no defense to such a fraud, or palliation thereof, that the

party producing it has some claim, or a full claim even, against the party so deceived and defrauded. The judgment which the defendant seeks to uphold, must fail if the service was made by resort to the means stated in the report of the referee. It is contended by the defendant that there is not sufficient evidence to support the findings of the referee. We are of the opinion that the principal facts found by the referee are supported by the evidence. Bloggett, a witness who testifies as to the admissions of the defendant, gives evidence which sustains the principal facts found by the referee. Whether credence should be given to Bloggett, was fairly a question for the referee to pass upon. Though he was contradicted by the defendant still the referee had a right to believe him. (*Wright* v. *Saunders*, 65 Barb., 214, affirmed 3 Keyes, 323.) Indeed it was within the province of the referee to say whether he would believe the defendant or his brother, in regard to the matters detailed by them. One was a party, the other, his brother, and both had become so identified with the judgment as to render it proper for a referee to consider and scrutinize carefully their evidence before concluding that it was worthy of credence. (*Ellwood* v. *Tel. Co.*, 45 N. Y., 549; *Kavanagh* v. *Wilson*, 70 id., 177; *Gildersleeve* v. *Landon*, 73 id., 609; *Koehler* v. *Adler*, 78 id., 287.) Besides witnesses had been called that gave evidence tending to impeach the general character of the defendant.

Again, the referee had a right to consider the outlying circumstances connected with the origin and history of the judgment in weighing the evidence of the defendant and his brother. In short we are of the opinion that the evidence warranted the conclusions of fact found by the referee, and we therefore ought not to reverse the judgment, upon the ground that the referee's findings are against the weight of the evidence.

It is insisted by the defendant that the referee committed an error in allowing witnesses to impeach the general character of the defendant after he had given evidence upon some of the principal matters in controversy, and been cross-examined by the plaintiffs in respect thereto, and as to some other circumstances and facts not involved in the examination in chief. We think the rule is settled in this State adverse to the defendant, by authorities binding on us. (*Mattice* v. *Allen*, 33 Barb., 547, opinion of E. D. Smith; S. C.,

reversed upon another ground, appears in 3 Keyes, 492 ; *People* v. *Moore*, 15 Wend., 422.) The party who introduces a witness, vouches for his good character to the court, and he is supposed to be ready to maintain it.

It is contended by the defendant that the motion made by plaintiffs in December, 1878, at Special Term to open the judgment, and for leave to serve an answer and defense was an adjudication against and bar to the right to maintain this action. The motion was addressed to the discretion of the court. It was resisted upon technical grounds. One of them was that the proposed answer had not been served. The Special Term, also, was induced to entertain and considered an objection made to the motion, based upon the absence of proof, that no notice had been given of the judgment within one or three years from its recovery. Upon these objections the Special Term denied the motion without prejudice to a renewal. Under such circumstances the decision then made was not such an adjudication as to prevent the plaintiffs from maintaining this action, besides, the jurisdiction of the court to render the judgment is here challenged, and nothing occurred on the motion to confer jurisdiction to render the judgment, to ratify it, or to prevent its validity from being inquired into.

In the course of the trial the plaintiffs put in evidence the affidavits used by defendant in opposition to the motion, and the order made at Special Term. It was contended by defendant that the affidavits were conclusive upon the plaintiffs in this action. We think otherwise. It was allowable to the plaintiffs to show facts to be contrary to some of the statements in those affidavits. Such would have been the rule if plaintiffs had put a witness upon the stand, and he had in some parts of his testimony given evidence against them, they still would be at liberty to show the facts to be contrary to the statements made by the witness. This may be done by calling other witnesses. (*Hunt* v. *Fish*, 4 Barb., 324).

In the course of the trial the plaintiffs called one John Fitzgerald as a witness, and proved by him certain correspondence and negotiations and conversations had by him with the defendant, and his attorney Webb, in respect to giving evidence of what took place at the time of the alleged service of the summons in June, 1870. Before Fitzgerald was sworn, the defendant

and Webb had been examined as witnesses, and it is obvious that the object of the plaintiffs in calling Fitzgerald as a witness, was to show that the defendant and Webb had endeavored to suborn the witness Fitzgerald, and to induce him to attend and give evidence prejudicial to the plaintiffs. Fitzgerald sent a telegram to plaintiffs' counsel to the effect that he was acquainted with facts beneficial to plaintiffs. In the course of the examination in chief, plaintiffs asked Fitzgerald, viz.: "When you sent the telegram to me did you *understand* from the *interviews* that you had with Webb in New York, and your correspondence with him, that he wanted to procure you to swear false for money?" This was objected to "on the ground that he has stated what was said in New York, fully, and it is incompetent to give his understanding. It is for the court to say what he had a right to understand from what was said." Objections overruled and defendant excepted, and the witness answered, viz.: "That is fully understood from the first start." The witness was then asked, viz.: "Q. Did you understand the same in regard to Parsons?" Same objection, ruling and exception. "A. Yes." Defendant's counsel now contends that both rulings were erroneous. When this ruling was made the defendant and Webb had given evidence explanatory of their correspondence, telegrams, conversations and dealings with Fitzgerald, from which evidence they sought to make it appear that all their dealings with Fitzgerald had been fair and innocent. It had thus become very important to ascertain which was correct, the version given by Fitzgerald or that given by defendant and Webb. If the former was the correct version, then the testimony of defendant and of Webb was badly shaken and of little worth, and the evidence tending to support plaintiffs' case strengthened and made more potential. (*Gulerette* v. *McKinley*, 27 Hun, 332; *Morgan* v. *Frees*, 15 Barb., 352.) Which version was correct, had therefore become a very important question for the referee to determine. Both sides felt the force of the position taken by Fitzgerald, that there had been an attempt on the part of the defendant and his attorney, to bribe him into giving evidence damaging to the plaintiff and tending to support the defense, and that he had finally rejected the unholy proffer of money, and like an honest man exposed the attempt at subornation of perjury.

The first question we have quoted calls for the witness' *understanding* of the interviews with Webb, *and the "correspondence"* with him. Fitzgerald had been allowed to state all that was stated and all that was written to him. We think it was not permissible to ask his understanding from them, that Webb " wanted to procure (him) to swear false for money." The same question was put to Fitzgerald as to Parsons. Parsons had given his version, and the letters had been produced. Then it was for the court to say what had been the intent of Webb and Parsons, whether they had been engaged in a crime which would consign them to the State's prison and greatly weaken, if not entirely overthrow, the defense attempted in this action. We think it was error to permit Fitzgerald to give his understanding of the correspondence, telegrams and conversations. It was held in *Denman* v. *Campbell* (7 Hun, 88) that it was error to allow a witness to state who he supposed he was making a contract with. In *Smith* v. *Sergent* (2 Hun, 107), it was held error to allow a witness to state he supposed an assignment was executed by Corbin, and that what Corbin said or did was admissible, but that the supposition of the witness as to what was in fact done or omitted, was not. In *Rich* v. *Jakway* (18 Barb., 357), it is said the inference is to be drawn by the court as to what was the intent of the parties, and that was to be drawn from "what a party said or did." In *Nicolay* v. *Unger* (80 N. Y., 54), it was said a witness is not to be allowed to put a construction upon facts, that it is for the jury or court. (*Carpenter* v. *E. T. Co.*, 71 N. Y., 574.) We do not lay stress upon the argument that it was the duty of plaintiffs to first interrogate Webb before proving the attempt at subornation. 1st. Because the evidence given tends to show if any such efforts were made, they were with the assent and knowledge of defendant, if not indeed inspired and put on foot by him ; and 2d. Because Webb was called later in the case and contradicted all that bore against him, and as fully as he could have done had he been examined before Fitzgerald was allowed to testify. (*Hunt* v. *Fish, supra,* 331, op. of GRIDLY, J.) Plaintiffs seek to justify the rulings upon the ground that they were at liberty to show the motive the witness had in telegraphing the plaintiffs. Had the question put been confined to an inquiry as to what was his motive in communicating with the plaintiffs, a different question would be presented. Nor

do we think we ought to say that the evidence worked no harm, we think the effect of the evidence may have been to influence the referee in the consideration of the vital parts of the case. Though we may be of the opinion that his findings of fact are correct and just, we ought to see to it that parties have their issues of fact presented to the trial tribunal upon proper evidence in the first instance. We are constrained to say that for the error in respect to the questions quoted, there must be a new trial. Plaintiffs ask for a jury trial. That application can be presented to the Special Term.

SMITH, P. J., and BARKER, J., concurred.

Judgment reversed and new trial ordered, costs to abide the event.